UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

PAULETTE VAUGHN and JOY VAUGHN,

                            Plaintiffs,

        -against-

CONSUMER HOME MORTGAGE COMPANY, INC.,
MINDY S. ASHLEY, individually and in her capacity as a
substantial shareholder of CONSUMER HOME MORTGAGE
COMPANY, INC., THE FORECLOSURE NETWORK OF
METRO NEW YORK INC., MICHAEL ASHLEY, individually
and in his capacity as a substantial shareholder of CONSUMER
HOME MORTGAGE COMPANY, INC., ABN AMRO
MORTGAGE GROUP, INC., as assignee of and successor to
CONSUMER HOME MORTGAGE COMPANY, INC.,
ROBERT E. STANDFAST, MICHAEL PARKER, GARY
LEWIS, JAS LLC d/b/a THE FORECLOSURE NETWORK,
JILL SHARFF, JOSHUA SMILING, CHARLES SALVA
APPRAISALS, INC., CHARLES SALVA, MARTIN
SILVER, ESQ., ANN McGRANE, ESQ., KENNETH
GOLDEN, ESQ. AND UNITED STATES DEPARTMENT
OF HOUSING and URBAN DEVELOPMENT.

                            Defendants.

------------------------------------------------------------------------x

**NOTICE OF MOTION**

CV No.:  01-7937(ILG)(MDG)

      **PLEASE TAKE NOTICE**, that upon the annexed exhibits, the accompanying

Rule 56.1 Statement, the accompanying Memorandum of Law, and all prior pleadings and

proceedings, the undersigned attorneys for defendant Martin Silver, Esq. will move this Court at

the United States Court House, Cadman Plaza, Brooklyn, New York on the _____ day of

_____, 2005 at 10:00 a.m., or as soon thereafter as counsel can be heard, for an Order

pursuant to Fed. R. Civ. P. 56, granting defendant Martin Silver, Esq. summary judgment

dismissing plaintiffs' remaining causes of action against him, and awarding such other and

further relief as to this Court may seem just and proper.

PLEASE TAKE FURTHER NOTICE, that pursuant to the Order of United States

Magistrate Judge Marilyn D. Go, opposition papers, if any, are to be served on the undersigned

no later than August 24, 2005.

Dated: New York, New York
August 2, 2005

> BOUNDAS, SKARZYNSKI,
> WALSH & BLACK, LLC
>
> By: _____
> Michael F. McGowan (MM6967)
> Attorneys for Defendant
> Martin Silver, Esq.
> One Battery Park Plaza
> New York, New York 10004
> (212) 820-7750

To:  Brooklyn Legal Services Corp.
     Attorney for Plaintiffs
     80 Jamaica Avenue
     Brooklyn, New York 11207

     Jacob, Medinger & Finnegan, LLP
     Attorneys for Plaintiffs
     1270 Avenue of the Americas
     New York, New York 10020

     Coffinas & Coffinas, LLP
     Attorneys for Defendants The Foreclosure
     Network of Metro New York, Gary Lewis
     And Joshua Smiling
     275 Madison Avenue
     New York, New York 10016

     Catherine Mirabile, Esq.
     United States Attorney for the
      Eastern District of New York
     Attorney for Defendant Department
      of Housing and Urban Development
     One Pierrepont Plaza
     Brooklyn, New York 11201

Robert Mauer, Esq.
Attorney for Defendants Charles Salva
 and Charles Salva Appraisals, Inc.
1205 Franklin Avenue
Garden City, New York  11530


Upon Information and Belief, Plaintiffs Have
Settled and/or Discontinued This Action as
to Consumer Home Mortgage, Inc., Michael Parker,
Michael Ashley, Mindy S. Ashley, Ann McGrane, and
ABN AMRO Mortgage Group, Inc.


Upon Information and Belief, JAS LLC, and Jill
Scharff Have Not Appeared In This Action

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------------x

PAULETTE VAUGHN and JOY VAUGHN,

                          Plaintiffs,

        -against-

                                                          Civ. No.: 01-7937
CONSUMER HOME MORTGAGE COMPANY, INC.,         (ILG) (MDG)
MINDY S. ASHLEY, individually and in her capacity as a
substantial shareholder of CONSUMER HOME MORTGAGE
COMPANY, INC., THE FORECLOSURE NETWORK OF
METRO NEW YORK INC., MICHAEL ASHLEY, individually
and in his capacity as a substantial shareholder of CONSUMER
HOME MORTGAGE COMPANY, INC., ABN AMRO
MORTGAGE GROUP, INC., as assignee of and successor to
CONSUMER HOME MORTGAGE COMPANY, INC.,
ROBERT E. STANDFAST, MICHAEL PARKER, GARY
LEWIS, JAS LLC d/b/a THE FORECLOSURE NETWORK,
JILL SHARFF, JOSHUA SMILING, CHARLES SALVA
APPRAISALS, INC., CHARLES SALVA, MARTIN
SILVER, ESQ., ANN McGRANE, ESQ., KENNETH
GOLDEN, ESQ. AND UNITED STATES DEPARTMENT
OF HOUSING and URBAN DEVELOPMENT.

                          Defendants.

-------------------------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF MARTIN SILVER, ESQ.'S MOTION FOR SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

Plaintiff's First Amended Verified Complaint in this matter alleges causes of action

against Martin Silver, Esq. ("Silver") for fraud (first cause of action), fraudulent concealment

and fraudulent inducement (second cause of action), breach of fiduciary duty (third cause of

action), attorney malpractice (fourth cause of action), and violation of New York General

Business Law §349 (seventh cause of action). *See* Plaintiffs' First Amended Verified Complaint

annexed to defendant Silver's August 2, 2005 Notice of Motion as Exhibit "A". In essence, plaintiffs allege that the defendants engaged in a "predatory lending" scheme, inducing plaintiffs to purchase a property in Brooklyn for a price in excess of its fair market value and simultaneously inducing them to secure federally insured mortgage financing in an amount equal to the entire purchase price. In its March 23, 2003 Memorandum & Order, this Court dismissed plaintiffs' cause of action for fraudulent concealment and fraudulent inducement against all defendants and dismissed plaintiffs' cause of action for breach of fiduciary duty against Silver. *See Vaughn v. Consumer Home Mortgage, Inc.*, 2003 WL 21241669 (E.D.N.Y.). Accordingly, plaintiffs' remaining causes of action against defendant Silver sound in fraud, legal malpractice, and violation of New York General Business Law §349. Defendant Silver now moves this Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an order granting summary judgment dismissing plaintiffs' remaining causes of action against him.

## STATEMENT OF FACTS

Plaintiffs Paulette and Joy Vaughn purchased real property located at 247 Cooper Street, Brooklyn, New York (the "Premises"). According to plaintiff's First Amended Verified Complaint, Silver, who is an attorney, represented plaintiffs only at the closing on this property, at which point the plaintiffs had already entered into a contract to purchase the Premises and had secured mortgage financing for the purchase. Plaintiffs were represented by defendant Ann McGrane, Esq. when the contract of sale was executed and the mortgage financing obtained. In fact, plaintiffs had no contact whatsoever with Silver until they arrived at the February 9, 2001 closing for their purchase of the Premises.

The specific "factual" allegations in the First Amended Verified Complaint pertaining to

Silver are as follows:

113.  Silver had been retained by [defendant] Lewis to represent the plaintiffs
without their prior approval or consent.

114.  While plaintiffs had no prior knowledge of Silver, they assumed that
Silver was associated with McGrane, their original lawyer, and believed
that he was acting in her stead.

115.  Silver falsely and fraudulently, with intent to deceive, informed the
plaintiffs that he would be representing them in this particular transaction.
Silver falsely and fraudulently, with intent to deceive, assured them that he
would answer any questions they had and would fully protect their rights
and interests.

116.  Silver made these misrepresentations despite the fact that he was retained
by [defendant] FNNY and his loyalty lay with FNNY and [defendant]
CHM.

117.  In furtherance of the fraud scheme, Silver concealed from the plaintiffs
that he was viewing the closing documents for the first time and did not
review the documents but nevertheless coerced them to believe he had
done so and they detrimentally relied upon his misrepresentations.  Such
reliance furthered the defendants "merry-go-round" signing of said
documents whereby plaintiffs were unaware of what they signed.

118.  In furtherance of the fraud scheme, Silver falsely and fraudulently, with
intent to deceive, told the plaintiffs that the documents were "standard"
and to just "sign it here."

119.  Upon information and belief, it is standard operating procedure in real
estate transactions for counsel and all parties to exchange all documents to
be executed at the closing well before hand so each party can thoroughly
read and review said documents to make an informed decision.

120.  Both Silver and [defendant] Golden as well as the other defendants present
or represented at said closing were fully aware of the degree from which
Silver had departed from standard operating procedure and the bad faith
involved in his counsel to plaintiffs.

121.  The plaintiffs, unaware of the generally accepted closing procedure
conducted in these transactions, were deceived and defrauded by
defendants silence as to the inappropriateness of the closing.  Moreover,
[defendant] Kenneth Golden, Esq., as an attorney, and officer of the court

had a duty, at bare minimum, to insure that said closing was being conducted in a lawful manner.

122.   Silver's false and fraudulent actions and representations to plaintiffs, to the effect: (a) that the documents are "in order" or standard; (b) there was "no problem" as to the substance of any of the documents despite the fact that he did not know this to be true due to his failure to review said documents prior to said closing; and (c) directing the plaintiffs to sign each document in the place he designated to induced plaintiffs to detrimentally rely on Silver's good faith despite its absence.

124.   As each document was passed to Silver, he gave vague and legally meaningless descriptions of the document, such as telling the Vaughns, in furtherance of the fraud scheme, that the document was "in order" and directing them to sign and/or initial said documents and passed those documents back to Golden.

125.   Martin Silver, Esq. and Kenneth Golden, Esq., in furtherance of the fraud, completed all necessary document review within twenty (20) minutes.

126.   Upon information and belief, defendants Lewis, Standfast, Ashley, Parker, Silver and Golden and their agents were part of a scheme to defraud plaintiffs for the purpose of recovering a substantial amount of money for a property that was in disrepair and was not worth the sales price.

127.   Moreover, in furtherance of the fraud scheme and with intent to defraud, Silver knew and consciously avoided the fact that the deed conveyed to plaintiffs was executed by, Gary Lewis, a person without such power or authority to do so.

129.   The rapid exchange of closing papers to which plaintiffs were subjected to at that closing was designed to, and did, fraudulently conceal from the plaintiffs a variety of inconsistencies and contradictions.

130.   The package of closing documents provided to the plaintiffs by Kenneth Golden did not include either a Contract of Sale, a Deed, a copy of the Salva appraisal or any index of closing documents that would have revealed these other omissions.

131.   In furtherance of the scheme to commit fraud, all documents given to plaintiffs by both Golden and Silver were executed at a rapid pace, checks were passed between the parties and the Vaughns were congratulated about becoming homeowners.  However, in furtherance of the scheme to defraud the plaintiffs by defendants FNNY, CHM and its employees, officers and agents, the Vaughns did not receive any keys to their home nor were they able to move into the subject premises.

*See* Exhibit "A".

These are the only allegations leveled at Silver in plaintiffs' forty-seven page, two-hundred and forty seven paragraph First Amended Verified Complaint. Even if one accepts each of these "factual" allegations in plaintiffs' First Amended Verified Complaint as true, however, plaintiffs still cannot establish, with sufficient specificity, that they have suffered actual damages. In particular, plaintiffs concede that they never made a single payment on the mortgage note that they gave to defendant Consumer Home Mortgage. *See* transcript of plaintiff Joy Vaughn's April 15, 2005 deposition, annexed to defendant Silver's August 2, 2005 Notice of Motion as Exhibit "B", at p. 67; *see* transcript of plaintiff Paulette Vaughn's April 25, 2005 deposition, annexed to defendant Silver's August 2, 2005 Notice of Motion as Exhibit "C", at p. 212. Moreover, it is undisputed that plaintiffs' past and future obligations on the mortgage note, which was transferred to ABN AMRO at some point subsequent to the closing, have been unconditionally forgiven, despite plaintiffs' failure to make a single payment. *See* Exhibit "B" at p. 69.

In addition, upon information and belief, no foreclosure proceeding was ever commenced against the plaintiffs as a result of their failure to make payment on the aforementioned mortgage note.[1] *See* Exhibit "C" at p. 225. Plaintiff Joy Vaughn enjoys an excellent credit score of nearly

_____

[1]Plaintiff Joy Vaughn indicated that she believed a foreclosure proceeding may have been commenced. She testified that she believed she saw a reference to a foreclosure proceeding on a subsequent report of her credit. In light of this testimony, a little more than two weeks after the completion of plaintiffs' deposition testimony, defendant Silver served a May 13, 2005 Demand for the Production of Documents on plaintiffs seeking, *inter alia*, all documents pertaining to any such a foreclosure proceeding. *See* copy of defendant Silver's May 13, 2005 First Demand for the Production of Documents, annexed to Silver's Notice of Motion as Exhibit "D". Plaintiffs have never responded to this Demand, nor have they objected to it in any fashion. Unfortunately, however, on May 25, 2005, before plaintiffs' time to respond to the Demand had run, Magistrate Go ordered that all dispositive motions

650 and has applied for and received a Mastercard, a Sam's Club card, and an automobile lease subsequent to the events at issue in this action. *See* Exhibit "B" at pp. 75, 23-25. Plaintiff Paulette Vaughn, who had filed for personal bankruptcy in the 1990's, which necessitated the involvement of her daughter Joy in the transaction at issue in this action, recently applied for and received a credit card from PC Richard. *See* Exhibit "C" at pp. 33, 208. At their respective depositions, neither of the plaintiffs identified specific evidence that would suggest that they have experienced a derogation of their credit subsequent to their February 9, 2001 purchase of the Premises.[2]

Plaintiffs did testify that they used their own money to fund premiums for homeowner's insurance on the Premises and to pay for a termite "fee" or inspection. Plaintiffs, however, are unable to identify the insurance company that provided the homeowner's coverage, the amount they paid in premium, or how many payments they made. *See* Exhibit "C" at pp. 168-170; 206-207; Exhibit "B" at pp. 175-178. In addition, the termite inspection, which was performed by J-Son Pest Control, Inc., was clearly paid for out of the proceeds of the mortgage loan, on which plaintiffs never made a payment. *See* copy of J-Son Pest Control's January 8, 2001 Inspection Report annexed to Notice of Motion as Exhibit "E"; copy of February 9, 2001 check drawn on the Mortgage Disbursement Account of Consumer Home Mortgage's attorney, Kenneth Golden, Esq., made payable to J-Pest Control in the amount of $108.25, annexed as Exhibit "F". Other than plaintiffs' unsupported, conclusory testimony concerning the homeowners' insurance

---

be filed within three weeks. Thus, defendant Silver did not have an opportunity to move to compel a response to its Demand. Nevertheless, one would assume that to the extent documents pertaining to a foreclosure procedure exist, plaintiffs would submit them in opposition to the instant motion, as it is incumbent upon a plaintiff to bare all available proof in opposition to a motion for summary judgment.

[2]It is also undisputed that while plaintiffs were fee owners of the Premises in the days and weeks following the February 9, 2001 closing, at some point they relinquished their ownership rights in exchange for the extinguishing of the mortgage note obligation.

premium and the termite inspection, no evidence has been adduced during discovery that would

even remotely suggest that plaintiffs suffered actual damages as a result of the alleged

misfeasance of the defendants.

.

## ARGUMENT

### DEFENDANT SILVER MUST BE GRANTED SUMMARY JUDGMENT DISMISSING PLAINTIFFS' REMAINING CAUSES OF ACTION AGAINST HIM AS PLAINTIFFS CANNOT ESTABLISH THAT THEY HAVE SUFFERED ACTUAL DAMAGES AS A RESULT OF DEFENDANT SILVER'S ALLEGED MISCONDUCT

As noted above, plaintiffs' First Amended Verified Complaint has three remaining causes

of action against Silver following this Court's March 23, 2003 Order: the first cause of action

sounding in fraud; the fourth cause of action sounding in professional malpractice; and the

seventh cause of action based upon Silver's alleged violation of New York's General Business

Law §349. An essential element of a cause of action under all three of these theories is the

existence of actual damages. Inasmuch as plaintiffs cannot establish actual damages in this

action with any specificity, summary judgment must be granted to defendant Silver dismissing

all three remaining causes of action against him.


"The elements of common law fraud are: (1) the making of a material false

representation or the omission of a material fact; (2) made with knowledge of its falsity and an

intent to defraud; (3) leading to reasonable reliance on the part of the plaintiff; and (4) actual

damages as a result of such reliance." *United Artists Theatre Circuit, Inc. v. Sun Plaza*

*Enterprise Corp.*, 352 F.Supp. 342 (E.D.N.Y. 2005)(Glasser, J.); *Kirk V. Liberty Mutual Insurance Company*, 164 F.3d 618, (2d Cir. 1998). Moreover, New York's highest court has consistently stated that on a fraud claim, "[t]he true measure of damage is indemnity for the actual pecuniary loss sustained as the direct result of the wrong or what is known as the 'out-of-pocket' rule." *Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 421, 668 N.E.2d 1370, 1373, 646 N.Y.S.2d 76, 80 (1996). In the instant case, however, there is no ascertainable pecuniary loss, inasmuch as the plaintiffs' obligation on the mortgage note they gave to Consumer Home Mortgage was extinguished before plaintiffs ever made a payment on it. The only evidence of any indemnifiable pecuniary loss incurred by plaintiffs is the alleged payment of premium on homeowner's insurance on the Premises. The quantum of these alleged damages, however, is not ascertainable, as plaintiffs are unable to establish how much they purportedly paid in premium. Similarly, plaintiffs are unable to set forth any evidence that might suggest what they paid for the termite "fee" or inspection that they claim they funded. *See* Exhibit "C" at pp. 167-168, 206. Under these circumstances, plaintiffs' fraud cause of action must be dismissed.

The existence of actual damages is also an element of a *prima facie* claim for legal malpractice. *See Between the Bread Realty Corp. v. Salans Hertzfeld Heilbronn Christy & Veiner*, 290 A.D.2d 380, 381, 736 N.Y.S.2d 666, 668 (1st Dep't 2002). Accordingly, plaintiffs' cause of action for professional malpractice must fail for the same reason their cause of action for fraud fails, to wit: they are unable to proffer evidence of a quantifiable, indemnifiable loss. Plaintiffs cannot simply testify that they paid some sum of money at the February 9, 2001 closing out of their own pockets, without offering any evidence of the amount they paid or to

whom they paid it. Without these pieces of evidence, or some other evidence to support plaintiffs' self-serving, conclusory testimony on this issue, plaintiffs' cause of action for professional malpractice must be dismissed.

Finally, New York's General Business Law §349 provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful ." General Business Law §349 (a). The statute further provides that "any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice" or to recover his actual damages. *See* General Business Law §349(h). Thus, as is the case with a claim for common law fraud or legal malpractice, a plaintiff must establish actual damages in order to make out a *prima facie* claim under General Business Law §349. *See Donahue v. Ferolito, Vultaggio & Sons*, 13 A.D.3d 77, 78, 786 N.Y.S.2d 153, 154 (1st Dep't 2004)("The motion court correctly dismissed the claims under General Business Law §§349 and 350. Plaintiffs . . . failed to establish an actual damages . . .").

As noted above, however, plaintiffs in this action cannot put forth any evidence of ascertainable, quantifiable actual damages. Rather, plaintiffs' only evidence of actual damages is their own unsupported, conclusory testimony to the effect that they paid a terimite "fee" and premiums for homeowner's insurance in connection with the Premises, though they cannot recall exactly to whom they paid money or how much they paid for these things. Under these circumstances, and without some further evidence of plaintiffs' actual damages, this Court must grant summary judgment dismissing plaintiffs' claim pursuant to General Business Law §349.

## CONCLUSION

For the foregoing reasons, defendant Silver is entitled to summary judgment dismissing

plaintiffs' remaining causes of action against him, and is entitled to such other and further relief

which to this Court seems just and proper.

Dated:  August 2, 2005
New York, New York

Respectfully submitted,

BOUNDAS, SKARZYNSKI,
WALSH & BLACK, LLC

By: _____
Michael F. McGowan (MM6967)
Attorneys for MARTIN SILVER, ESQ.
One Battery Park Plaza
New York, New York  10004
(212) 820-7750