August 9, 2005

Michael F. McGowan, Esq.
Boundas, Skarzynski, Walsh & Black, LLC
One Battery Park Plaza
New York, New York 10004

      Re:    21-Day Demand Pursuant to FRCP Rule 11(c)(1)(A)
               to Withdraw Defendant Martin Silver's Motion for
               Summary Judgment

Dear Mr. McGowan:

We write to demand that you withdraw your Motion for Summary Judgment on the grounds that (a) you have grossly misstated the "facts" about which you contend there is no dispute; (b) you have omitted numerous material issues of fact that are in dispute and are material to the issue of both your client's liability and our clients' damages; and (c) you have ignored the plaintiffs' legal right to have obtained *good title* to a *legal* three-family dwelling in *fully* repaired condition, as promised in the contract of sale but *not* delivered at the closing by reason of Martin Silver's malpractice (including his breach of fiduciary duty) and collusion with the other private defendants, and the money damages they have suffered thereby.

If you have not withdrawn your motion within twenty-one days of this date, we will interpose our opposition on the scheduled date of August 24, 2005, and if Judge Glasser denies your motion for any of the reasons set forth herein, we will then move pursuant to Rule 11(c)(2) for sanctions including the reasonable expenses and attorneys' fees incurred in opposing your motion.

## FALSE STATEMENTS CONTAINED IN MOVANTS
## STATEMENT PURSUANT TO LOCAL RULE 56.1(a)

Your Rule 56.1 Statement contains seven (7) numbered statements about which you assert there is no material issue of fact in dispute. This representation is false.  There are factual disputes, of which you have actual knowledge, based upon documents which have been exchanged and deposition testimony which has been taken during the course of this litigation. These disputes involve your Rule 56.1 assertions numbered "1", "2", "3" and "7".

Michael F. McGowan, Esq.
August 8, 2005
Page 2

Taking these assertions in order, in "1", you state that "Plaintiffs purchased 247 Cooper Street in Brooklyn, New York", and refer to plaintiffs First Amended Verified Complaint as paragraph "5". While this statement reflected the plaintiffs' good faith belief at the time, discovery has revealed that the purported grantor who signed the deed to plaintiffs, defendant Gary Lewis, was claiming the right to convey legal title to the premises for the owner, defendant JAS, LLC, pursuant to a "verbal power of attorney". (See deposition of Gary Lewis, at pp. 24-26 and 94-96, annexed as Exhibit A hereto).

The owner, JAS, LLC, was represented by the firm of Bank, Tanen & Bank, one of whose partners, Jeffrey Tanen, Esq. testified at his deposition that "He [Lewis] refers to a verbal power of attorney. There is no such thing as a verbal power of attorney" (See Deposition of Jeffrey Tanen, Esq., at p.84 , annexed as Exhibit B hereto). Thus, while the Vaughn's originally believed that they had obtained good title to 247 Cooper Street, Brooklyn, New York, it is now clear that they did not. Moreover, at the deposition of defendant-movant Martin Silver, he stated that he did not know in what capacity Gary Lewis signed the deed, and that he had no recollection of Lewis' authority or capacity to sign for JAS, LLC. (See deposition of Martin Silver, Esq., at pp. 78-80, annexed hereto as Exhibit C).

As you concede in your Memorandum of Law in support of the instant motion, the plaintiffs First Amended Verified Complaint (annexed as Exhibit D) asserts no fewer than *seventeen* separate allegations of fraud, collusion and conflict of interest involving Martin Silver, including allegations that he was retained by Foreclosure Network of New York (FNNY) and was loyal to them (¶116), that he deceived them into believing that the closing documents were in order, despite seeing them for the first time at the closing (¶117-118) and that Silver was fully aware of the degree to which he was departing from standard operating procedure and advising plaintiffs "in bad faith"(¶120, 122). Most importantly, the complaint alleges, at ¶ 127, "Moreover, in furtherance of the fraud scheme and with intent to defraud, Silver *knew and consciously avoided the fact that the deed conveyed to plaintiffs was executed by, Gary Lewis, a person without such power or authority to do so."* (Emphasis added).

Thus, your unadorned assertion in point "1" of your Rule 56.1 statement is implicitly false, in that the plaintiffs did *not* purchase good title to the premises, and is knowingly misleading, in that *you* have actual knowledge of both ¶127 of the complaint and the testimony of Lewis, Tanen, and your own client, as referred to above.

These factual disputes are not only material to this motion regarding the issue of liability, but also go directly to the issue of damages. Specifically, *but for* Martin Silver's malpractice, disloyalty and bad faith as alleged in the complaint, rather than proceeding with the sham closing, the Vaughns would have clearly been entitled to *specific performance* of the January 8, 2001 contract of sale; i.e. *good* title to a *legal* three family house in *fully* repaired condition.(See contract of sale annexed hereto as Exhibit E). The fact that Martin Silver, acting in bad faith and in collusion with Gary Lewis and FNNY, not only concealed from the Vaughns that the title was defective and the building was not a legal three-family dwelling, but also intentionally failed to

Michael F. McGowan, Esq.
August 8, 2005
Page 3

advise them of their right to the full benefit of their bargain by bringing an action for specific performance. *Rahimzadeh v. M.A.C. Associates*, 304 A.D. 2d 636(2nd Dept., 2003); *Diguglielmo v. Peixoto*, 134 A.D.2d 320(2nd Dept., 1987).

Had Silver counseled and advised the Vaughns in an honest and loyal fashion, they would today have good title to a legal three-family house that had been repaired in compliance with applicable codes and regulations governing multiple dwellings in New York City. Even at the then inflated contract price of $290,000.00, the appreciated value of this property as a legal, 3-family multiple dwelling, would today exceed $450,000, and have a fair market value as high as $500,000. Thus, at a minimum, plaintiffs have suffered actual damages in an amount exceeding $250,000.00.

These "appreciation" damages have been established law in the State of New York since the landmark case of *In the Matter of the Estate of Mark Rothko*, 43 NY2d 305, at 321-322(Ct. of App., 1977). See also. *Scalp & Blade, Inc. V. Advest*, 309 A.D.2d 219, at 232 (4th Dept., 2003); *Matter of Janes*, 90 N.Y.2d 41 (Ct. Of App.,    )  In *Rothko* and its progeny, it was not mere negligence but breach of fiduciary duty and conflict of interest which justified appreciation damages. In Rothko, Judge Cooke held "...if it had not been for the breach of trust the property would still have been a part of the trust estate." This is precisely the sort of disloyalty, conflict of interest and bad faith which the Vaughns allege against their lawyer, Martin Silver, in this action, and it was this misconduct that deprived them of sound legal counsel and information regarding their right to *full and lawful performance* of the contract of sale and prevented them from compelling defendants to give them *good* title to a *legal* 3-family house, that had been renovated in compliance with the law.

In your Rule 56.1 Statement, at "2" you state that "Ann McGrane, Esq. represented the plaintiffs at the time they executed the contract of sale *and secured the mortgage financing for the Premises."*  (Emphasis added).  You then refer to ¶¶s 47-74 of the complaint to support this assertion. This statement is false. Not only does the complaint make no reference to attorney Ann McGrane participating in the mortgage financing aspect of the transaction, *you are in possession of her declaration* (Declaration of Ann McGrane, annexed hereto as Exhibit F) in which she explains and corrects allegations in the complaint, including the fact that she was told by defendant Gary Lewis that the Vaughns wanted her dismissed. (Declaration of McGrane at ¶5). Thus, the implication that it was Ann McGrane that participated in obtaining mortgage financing, and represented the interests of the Vaughns is blatantly false and misleading, when the complaint clearly states that the Vaughns were deceived into believing that Silver was associated with McGrane. (Exhibit D at ¶¶s 114-117) and concealed the fact that he had never even reviewed the documents.

In "3" of your Rule 56.1 Statement, you assert that "Silver first met *and was retained by plaintiffs at the closing* for 247 Cooper Street." (Emphasis added).  This is merely a self-serving statement of Mr. Silver at his deposition, and disputes both the allegations in the complaint and

Michael F. McGowan, Esq.
August 8, 2005
Page 4

the Declaration of Ann McGrane (annexed as Exhibit F).  In truth, Silver was substituted for
McGrane by defendant Lewis, not the Vaughns,  because Ms. McGrane had given independent
advice and counsel to a prior complaint and incurred the wrath of Lewis, and that Silver could be
relied on by Lewis to sell out the Vaughns by not reviewing documents in any meaningful way.
(See McGrane Declaration at footnote 1).

      Finally, in "7" of your Rule 56.1 Statement, you assert that "Plaintiffs did not suffer any
pecuniary loss as a result of purchasing 247 Cooper Street and/or giving the mortgage note to
Consumer Home Mortgage."  This statement is not only false, but particularly offensive when
uttered on behalf of the corrupt legal counsel whose disloyal and unethical representation of the
Vaughns presented them with a Hobson's choice of either proceeding with a closing and taking
physical possession of property to which they had no good title, which lacked a legal Certificate
of Occupancy as a three-family dwelling[1], and which was in a physical shambles and
uninhabitable at the time of and following the closing, or refusing to take physical possession
following the closing when it was too late to sue for specific performance.

      But for the corruption, disloyalty and malpractice by the Vaughns' attorney, Martin Silver,
they would have refused to close title *until* the seller, JAS, LLC,  had specifically performed its
promise to deliver to them good title of a properly renovated and legal 3-family home, .  As
discussed above, as the result of Silver's 'breach of trust', as well as his connivance and collusion
with Lewis, FNNY and other defendants in the fraudulent scheme, the Vaughns would own this
property today. *Rothko, supra.*

      By virtue of the lost appreciation value they would otherwise have realized, as well as the
fact that they have had to pay rent for almost five years without obtaining any equity therefor, the
Vaughns' have suffered actual damages of no less than $250,000.00.  Moreover, the "pattern and
practice" facts alleged in the complaint, and which you do not deny, demonstrate that not just the
Vaughns but numerous other minority first time home buyers are vulnerable to these fraudulent
schemes because Martin Silver and other unscrupulous attorneys betray their fiduciary duties as
lawyers to aid and abet these schemes.  That attorney Silver would make this motion on the
limited ground that, *even if he cheated and betrayed them* the fact that the undersigned counsel
were able to get the mortgage and note forgiven left the Vaughns economically unharmed, is as
unseemly as it is meritless.  Indeed, to the extent that it implicitly concedes Silver's misconduct, it
is morally appalling.

---

[1]     Multiple Dwellings that have been vacant for more than 60 days lose their Certificate of
Occupancy. (See Lewis Deposition at pp. 140-142). They may not, therefore, be legally rented to
tenants, a fact which Silver also failed to impart to the Vaughns.

Michael F. McGowan, Esq.
August 8, 2005
Page 5


      In any event, for all of the reasons stated above, your motion for summary judgment is manifestly frivolous, unsupported by law and unwarranted by the numerous material issues of fact that are in dispute and the plaintiffs demand that it be withdrawn.

                      Very truly yours,


                    /s/ Richard J. Wagner_____
                    Richard J. Wagner (RW3017)
                    Brooklyn Legal Services Corp. "A"
                    80 Jamaica Avenue
                    Brooklyn, New York 11207

                        And

                    /s/ Peter A. Cross_____
                    Peter A. Cross (PC 8492)
                    Hugh A. Zuber (HZ 4935)
                    Jacob, Medinger & Finnegan, LLP
                    1270 Avenue of the Americas
                    New York, New York 10020



.