UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
PAULETTE VAUGHN and JOY VAUGHN,

                              Plaintiffs,            **DECLARATION OF**
       -against-                                      **MICHAEL F. McGOWAN**
                                                               **IN REPLY TO PLAINTIFFS'**
CONSUMER HOME MORTGAGE COMPANY, INC.,    **OPPOSITION TO MOTION**
MINDY S. ASHLEY, individually and in her capacity as a    **FOR SUMMARY JUDGMENT**
substantial shareholder of CONSUMER HOME MORTGAGE
COMPANY, INC., THE FORECLOSURE NETWORK OF
METRO NEW YORK INC., MICHAEL ASHLEY, individually
and in his capacity as a substantial shareholder of CONSUMER
HOME MORTGAGE COMPANY, INC., ABN AMRO               CV No.: 01-7937(ILG)(MDG)
MORTGAGE GROUP, INC., as assignee of and successor to
CONSUMER HOME MORTGAGE COMPANY, INC.,
ROBERT E. STANDFAST, MICHAEL PARKER, GARY
LEWIS, JAS LLC d/b/a THE FORECLOSURE NETWORK,
JILL SHARFF, JOSHUA SMILING, CHARLES SALVA
APPRAISALS, INC., CHARLES SALVA, MARTIN
SILVER, ESQ., ANN McGRANE, ESQ., KENNETH
GOLDEN, ESQ. AND UNITED STATES DEPARTMENT
OF HOUSING and URBAN DEVELOPMENT.

                              Defendants.
----------------------------------------------------------------------x

       MICHAEL F. McGOWAN, ESQ., declares the following to be true under penalty of perjury pursuant to 28 U.S.C. §1746:

       1. I am a Member of the law firm of Boundas, Skarzynski, Walsh & Black, LLC, attorneys for defendant Martin Silver, Esq. ("Silver") in the above-captioned action.

       2. Defendant Silver submits the within Declaration in reply to the August 24, 2005 Declaration of Richard J. Wagner, Esq. in Opposition to Motion for Summary Judgment ("Wagner Declaration"), and in further support of Silver's Motion for Summary Judgment.

       3. As a threshold matter, defendant Silver is compelled to note that there is no genuine opposition to his Motion for Summary Judgment. The aforementioned Wagner

Declaration, with its accompanying exhibits, is the only document submitted in opposition to Silver's motion. That Declaration is a one page, three paragraph document that addresses none of the arguments made in Silver's motion; rather, the Wagner Declaration simply states that it, along with the exhibits annexed to it, is being submitted in opposition to the motion. Defendant Silver submits that this does not constitute opposition to his motion and that the motion for summary judgment should therefore be granted without opposition. To the extent that plaintiffs' counsel's attempt to "incorporate" its August 9, 2005 letter to the undersigned "by reference" is recognized by the Court, the following paragraphs contain a response to that letter.

4. Most of plaintiffs' counsel's August 9, 2005 letter inveighs against certain assertions made by Silver in his Local Rule 56.1 Statement. Whatever the merit of plaintiffs' objections to the contentions contained in Silver's Local Rule 56.1 Statement, Silver's contentions are of little or no import for purposes of his summary judgment motion, *which is grounded solely upon the fact that plaintiffs have suffered no legally cognizable damages* in this matter. There are no other grounds upon which Silver has moved for summary judgment; thus, there is no reason for Silver to address most of the invective contained in plaintiffs' counsel's August 9, 2005 letter.

5. Plaintiffs' counsel's August 9, 2005 letter does set forth a solitary argument in response to Silver's assertion that plaintiffs have suffered no legally cognizable damages, to wit: plaintiffs, for the first time in the four years since they brought this action, now suggest that they have been damaged because Silver's negligence *prevented them from purchasing the property* they have consistently claimed was dilapidated and overpriced. Had Silver's negligence not prevented plaintiffs from purchasing the property, plaintiffs' counsel claims, plaintiffs would currently have title to a desirable property in the Bushwick section of Brooklyn, which, although

fraudulently overpriced at $290,000 in 2001, is now allegedly worth in excess of $450,000.[1]

6. Plaintiffs' allegation that their damages stem from the fact that they do not currently own 247 Cooper Street (the "Premises"), as opposed to the fact that they were unwittingly duped into entering into a contract of sale and securing a mortgage loan to purchase an undesirable and overpriced piece of property, appears nowhere in any of plaintiffs' Complaints. Rather, plaintiffs' First Amended Verified Complaint repeatedly alleges that, but for the malfeasance of the defendants, plaintiffs would not have gone forward with the purchase of the Premises. *See, e.g.,* plaintiffs' First Amended Verified Complaint, annexed to Silver's August 2, 2005 Notice of Motion as Exhibit "A", at ¶¶70, 126 and 181.

7. Moreover, plaintiffs' counsel's insistence that Silver is somehow culpable for plaintiffs' purported failure to hold "good" title to the Premises for the brief time that they were obligated on the mortgage loan misconstrues the contract of sale, as well as a purchaser's attorney's role in ensuring that the seller's contractual obligations are fulfilled. The contract of sale in the instant case unambiguously provides that the "[s]eller shall give and purchaser shall accept such title as any reputable title company will be willing to approve and insure in accordance with their standard form of title policy, subject only to the matters provided for in this contract." *See* Exhibit "E" annexed to Wagner Declaration, at ¶5. The contract language is consistent with Silver's deposition testimony, wherein he states that inasmuch as the contract calls for the purchaser to be provided with "insurable" title, insurable title is what he, as an attorney, seeks to ensure that his client receives. *See* Exhibit "C" annexed to Wagner

---

[1] Plaintiffs offer absolutely no support for their outrageous claim that the property in question, which remained abandoned at the time the parties conducted an on-site inspection of it in the spring of 2003, is now worth $450,000 or more. Significantly, one of the linchpins of plaintiffs' claims against the defendants has been that inasmuch as the property was purchased by JAS, LLC in late 2000 for $165,000, it could not possibly have been worth $290,000 in February of 2001 and therefore would not have been purchased by plaintiffs but for the defendants' fraud.

Declaration, at p. 81. In the instant case, a title policy was issued by Fidelity National Title Insurance Company of New York. *See* copy of February 9, 2001 policy issued by Fidelity National Title Insurance Company of New York, annexed hereto as Exhibit "A". No one has suggested that Fidelity National Title Insurance Company of New York is less than a "reputable title company;" accordingly, the terms of the contract of sale were complied with and Silver would not have had any basis, with respect to the quality of title being conveyed, upon which to prevent the transaction from being consummated. Indeed, plaintiffs have failed to put forth any testimonial evidence from an expert that would suggest otherwise.

        8. In sum, plaintiffs have utterly failed to respond to Silver's Motion for Summary Judgment. Rather than oppose the motion by setting forth evidence establishing that plaintiffs' ability to obtain credit or has been adversely affected, plaintiffs' counsel has instead put forth an entirely new theory of damages, one that is not only absent from plaintiffs' pleadings, but is directly contradicted by them. It is respectfully submitted that this Court cannot countenance such an "about face" at this stage of the litigation; on the contrary, plaintiffs' failure to address the argument made in Silver's motion mandates a grant of summary judgment in his favor.

Dated: New York, New York
       September 1, 2005

                                          /s/ Michael F. McGowan
                                         MICHAEL F. McGOWAN