UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------x
PAULETTE VAUGHN and JOY VAUGHN,

                    Plaintiffs,

     -against-

CONSUMER HOME MORTGAGE
COMPANY, INC. (CHM), THE
FORECLOSURE NETWORK OF NEW
YORK, INC. (FNNY), MICHAEL ASHLEY,
individually and in his capacity as an
officer and/or substantial shareholder of
CHM, JAS PROPERTY SERVICES a/k/a
JAS LLC, ABN AMRO MORTGAGE
GROUP, INC., as assignee of and successor
to CHM, MICHAEL PARKER, individually
and in his capacity as officer/ employee of
CHM, GARY LEWIS, individually and as
President of FNNY, JOSHUA SMILING,
CHARLES SALVA APPRAISALS, INC.,
CHARLES SALVA, MARTIN SILVER,
ESQ., ANN MCGRANE, ESQ., KENNETH
GOLDEN, ESQ. and MEL MARTINEZ, as
Secretary of the UNITED STATES
DEPARTMENT OF HOUSING AND
URBAN DEVELOPMENT,

                    Defendants.
----------------------------------------------x
DANA Y. BANKS and DAVID B.
MOUNSEY,

                    Plaintiffs,

     -against-

CONSUMER HOME MORTGAGE
COMPANY, INC., ET AL.

                    Defendants.
----------------------------------------------x

<u>MEMORANDUM AND ORDER</u>
01-CV-7937 (ILG)

GLASSER, United States District Judge:

## **INTRODUCTION**

_____The Court considers three motions in a dispute arising out of two separate home purchases in Brooklyn, New York at allegedly inflated prices.  In two related cases consolidated pursuant to an April 14, 2003 Order of this Court (Docket No. 97), plaintiffs Paulette and Joy Vaughn, and Dana Banks and David Mounsey (collectively, "Plaintiffs") seek relief against named defendant alleging that they have been victims of a predatory lending fraud.  Plaintiffs also seek declaratory relief against the United States Department of Housing and Urban Development ("HUD"), via the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq., for abuse of discretion and failure to discharge duties under certain provisions of the National Housing Act, 12 U.S.C.  §§1708, 1709, and the Fair Housing Act 42 U.S.C. §§ 3601 et seq.  Pursuant to § 3608(e), Plaintiffs argue that HUD has failed to meet its affirmative obligation to combat discrimination in the housing market.

HUD moves to dismiss the declaratory relief claims in the Proposed Second Amended Complaint for three reasons.[1]  First, HUD asserts that the Supreme Court's decision in Norton v. Southern Utah Wilderness Alliance, 124 S.Ct. 2373 (2004) limits subject matter jurisdiction to those discrete "agency actions" required by statute, and that Plaintiffs fail to point to any statute with which HUD has failed to comply.  (Id., at 2378-

---

[1] HUD does not oppose leave to amend the First Amended Complaint, but instead moves directly against the declaratory relief claims added to the Proposed Second Amended Complaint.  The showing necessary to prevail on a motion to dismiss is the same as that imposed by the "futility" standard in the context of Fed.R.Civ.P. Rule 15.  A grant of the defendant's motion here thus operates as a determination that the proposed amendment of the declaratory relief claims against HUD would be futile.

9).  Second, HUD argues that the injuries complained of are either past injuries or are speculative future ones, and therefore cannot provide Plaintiffs with standing for declaratory relief.  Third, HUD contends that Plaintiffs do not have standing to seek declaratory relief because their injury cannot be redressed by a declaratory judgment against HUD.

Defendant Martin Silver ("Silver"), an attorney that represented the Vaughns at the closing, moves for summary judgment based on lack of proof of actual damages under any of the causes of action alleged against him.[2]  In opposition, Plaintiffs assert a measure of damages based upon what the present market value of the property would have been had they been able to obtain the property as it was promised in the contract of sale.

Finally, pursuant to Fed. R. Civ. P. Rules 15 & 21, Plaintiffs Paulette Vaughn and Joy Vaughn ("Vaughns") seek leave to file a Second Amended Complaint to add as defendants Jeffrey Tanen, Esq. ("Tanen") and his law firm, Bank Tanen and Bank (collectively, the "Tanen proposed defendants"), as well as Sloan Cooper and Peter Cooper, Esq. (the "Cooper proposed defendants"), principals of defendant JAS, LLC, and to assert claims against them for aiding and abetting fraud and for violating New York General Business Law §349.  In opposition, the Tanen proposed defendants argue that the motion should be denied because Plaintiffs' proposed amendments are futile and prejudicial.   Neither the Cooper proposed defendants nor any other party to this action opposes the Plaintiffs' motion to amend.

---

[2]  Only the Vaughn Complaint makes allegations against defendant attorney Silver.

For the following reasons, HUD's motion to dismiss is granted, Silver's motion for summary judgment is granted, and Plaintiffs' motion to amend the Complaint is denied.

## HUD'S MOTION TO DISMISS

## BACKGROUND

## I.      History and Allegations

This Memorandum and Order follows several previous decisions, familiarity with which is assumed.  See Vaughn v. Consumer Home Mortgage, Inc., 293 F.Supp.2d 206 (E.D.N.Y. 2003) (deciding HUD's 12(b)(6) motion to dismiss Plaintiff's claims for injunctive relief against HUD, dated March 23, 2003) (hereinafter "Vaughn I").  See also, Vaughn v. Consumer Home Mortgage Inc., 2003 WL 21241669 (E.D.N.Y. 2003).  Only those facts relevant to the disposition of the pending motions will be restated here.

The Vaughns are joint purchasers of residential property located at 247 Cooper Street in Brooklyn, New York.  Banks and Mounsey are the joint purchasers of residential property located at 415 Pennsylvania Avenue in Brooklyn, New York.  Plaintiffs purchased their respective properties through Defendant Foreclosure Network of New York ("FNNY").  See Vaughn I, 293 F.Supp.2d at 208.  Plaintiffs initiated suit against FNNY and other defendants affiliated with that company, including attorneys that represented Plaintiffs during closing proceedings, alleging that they made false representations with the intent to deceive them into purchasing properties at inflated prices.  (Id.).  As a component of the alleged scheme, FNNY steered Plaintiffs toward defendant Consumer Home Mortgage ("CHM"), a lender it is alleged was consistently used to further the predatory lending scheme, in part by submitting fraudulent appraisal reports to HUD in order to obtain FHA mortgage insurance.  (Id., at 209).

4

Prior to this motion, several defendants made an offer of judgment pursuant to Fed. R. Civ. P. Rule 68 in the amount of $500,000.[3] That offer was accepted and the judgment amount has been fully paid.  (Id.).  Plaintiffs have pursued the litigation against the remaining defendants, including HUD, to which the discussion now turns.

In Vaughn I, a case decided before Norton, the Court dealt with the question of whether or not the APA permitted plaintiff to pursue a claim for injunctive relief against HUD.  The Court held that the APA permitted review of HUD's actions, but Plaintiffs could not meet the rigorous standards for obtaining a mandatory permanent injunction, which requires a showing of "(1) irreparable harm and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions on the merits and a balance of hardships tipping decidedly in the movant's favor."  Vaughn I, 293 F.Supp.2d 214.

The present motion by HUD revisits without replicating the issues discussed in Vaughn I.  In essence, the Proposed Second Amended Complaint ("2d Am. Compl.") asserts that HUD had a duty to prevent housing discrimination against Plaintiffs as African-American home buyers, and that HUD's failure to institute policies to protect against manipulation by predatory lenders, including HUD's co-defendants, constitutes an abrogation of that duty.  The Vaughns' Second Amended Complaint alleges violations of the National Housing Act, 12 U.S.C. §§1708 & 1709, as well as claims under the Fair Housing Act 42 U.S.C. §§ 3601 et seq., specifically § 3608(e), arguing that HUD has

---

[3] The settling defendants were: Michael Ashley, Mindy Ashley, Option-to-buy, Ltd., Suzanne Shiavetta, Consumer Home Mortgage, Inc., Michael Parker, Robert Standfast, and Kenneth Golden. ("Notice of Acceptance of Offer of Judgment," Docket No. 118).

failed to meet its affirmative obligation to combat housing discrimination.[4]  (2d Am. Compl., ¶ 242).  Plaintiffs have argued that HUD failed and refused to:  (a) exercise due diligence in the issuance of federally-insured mortgages; and (b) warn prospective purchasers/borrowers of a known and substantial risk to them of the dangers of falling prey to predatory selling and lending schemes.

## II.    The Administrative Procedures Act

The right of review of "agency action" is provided by 5 U.S.C. § 702, which states in pertinent part that:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.  An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States.... Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

5 U.S.C. § 702.

Title 5 U.S.C. § 701(b)(2) provides that the meaning of "agency action" in § 702 has the meaning given to it by 5 U.S.C. § 551.  Section 551 defines "agency action" as including "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 551(13).[5]

Title 5 U.S.C. § 701(a) limits the judicial review prescribed at § 702 "to the extent

---

[4]  The Plaintiffs' Complaints allege essentially the same violations, so the Court's discussion applies with equal force to both.

[5]  The terms rule, order, license, sanction, relief are explicitly defined at § 551(4)-(11).

that—(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law."

5 U.S.C. § 706 governs the scope of judicial review of agency action:

> ...[T]he reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall–
>> (1) compel agency action unlawfully withheld or unreasonably delayed; and
>> (2) hold unlawful and set aside agency action, findings, and conclusions found to be –(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; (E) unsupported by substantial evidence in a case….; or (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

5 U.S.C. § 706.

As a result, Plaintiffs request a judgment "declaring that the failure by HUD to exercise due diligence in the issuance of FHA mortgage insurance constitutes an abuse of discretion in the administration of the FHA Mortgage Insurance Program." (2d Am. Compl. ¶ 242). They also request "a judgment in the nature of mandamus to compel the HUD Secretary to issue such orders and directions as are necessary to compel those subordinates charged with administering the FHA mortgage insurance program to exercise reasonable care and due diligence as will prevent or substantially reduce the risk of issuing mortgage insurance policies for home sales financed at fraudulently inflated amounts." (2d Am. Compl. ¶ 258(H), (I)).

## DISCUSSION

**I.      HUD's Motion to Dismiss**

HUD asserts dismissal is warranted for several reasons. First, HUD contends that

<u>Norton v. Southern Utah Wilderness Alliance</u>, 124 S.Ct. 2373 (2004), limits the jurisdiction of this Court to consider only discrete agency failures to perform actions that are legally required. Second, HUD contends that Plaintiffs do not have standing to assert a claim for declaratory relief against HUD, since the injuries which form the basis for their claim are, at most, speculative. Third and relatedly, HUD argues that Plaintiffs don't have standing because their injuries cannot be redressed by the declaratory relief they seek.

In opposition, Plaintiffs contend that HUD's actions may reasonably be construed as either agency inaction, that is, failure to provide basic safeguards against fraudulent misuse of its direct endorsement program by unscrupulous mortgagees, or agency action, in the sense that it ultimately (albeit unknowingly) participated in flip selling practices by insuring the loans. In either event, Plaintiffs argue, 42 U.S.C. § 3608 imposes upon HUD the obligation of affirmatively combating discrimination in the housing market, including the aforementioned predatory lending practices, and that its failure to do so is sufficiently discrete to pass muster under <u>Norton</u>. Second, with respect to the standing issue, they assert that they may once again attempt to buy a home and be forced to rely upon HUD's backing, and that without a declaration that HUD must do more to combat discriminatory lending practices, they will again be subject to risks in the housing market. Additionally, Plaintiffs Banks and Mounsey contend that a foreclosure action in state court is pending against them, and a declaration that HUD has failed to perform due diligence in protecting against fraudulent misuse of its direct endorsement program will bolster their defense in that action.

Finally, in response to HUD's contention that declaratory relief will offer Plaintiffs

no benefit, Plaintiffs contend that HUD's mortgage guarantee is the lynchpin for lending fraud, and that a declaration obliging HUD to improve its loan monitoring will therefore, at minimum, reduce lending abuses.

Although the Court has serious doubts as to the Government's contention that Norton barred APA-based review of HUD's obligations under 42 U.S.C. § 3601 et seq., that issue is not reached, since it is clear that Plaintiffs assert no harm that would allow them to obtain the declaratory relief they seek.

## II. Applicable Law

### A. Article III, Standing, and the Case or Controversy Requirement

Article III, § 2 of the Constitution sets out parameters for justiciability. Standing, like other doctrines such as ripeness, mootness, and political question that emanate from Article III, represents "an idea, which is more than intuition but less than a rigorous and explicit theory, about the constitutional and prudential limits of the powers of an unelected, unrepresentative judiciary in our kind of government." Allen v. Wright, 468 U.S. 737, 750, 104 S.Ct. 3315 (1984).

Section 2 of Article III of the Constitution grants judicial power to the federal courts to adjudicate certain "cases" and "controversies." In order to "identify those disputes which are appropriately resolved through the judicial process," as opposed to through legislative or executive mechanisms, the doctrine of standing remains "an essential and unchanging part of the case-or-controversy requirement." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130 (1992) (citing Whitmore v. Arkansas, 495 U.S. 149, 155, 110 S.Ct. 1717, 1722, 109 L.Ed.2d 135 (1990)).

There are three requisites to showing standing:

First, the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly . . . .trace[able] to the challenged actions of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court. Third, it must be likely as opposed to merely speculative, that the injury will be redressed by a favorable decision."

Lujan, 504 U.S. at 560-61.

A plaintiff must demonstrate standing "for each claim and form of relief sought."

Rosenberger v. New York State Office of Temporary and Disability Assistance, 153

Fed.Appx. 753, 755 (2d Cir.2005) (citing Baur v. Veneman, 352 F.3d 625, 642 n. 15 (2d

Cir.2003)). For declaratory relief,[6] the inquiry into the "case or controversy"

requirement is essentially co-extensive with an evaluation of Article III standing. (Dow

Jones & Co., Inc. v. Harrods Ltd., 237 F.Supp.2d 394, 406 (S.D.N.Y. 2002). However, a

plaintiff seeking declaratory relief cannot rely on past injury alone to meet the standing

requirement. McCormick v. School District of Mamaroneck, 370 F.3d 275, 284 (2d Cir.

2004). See also Lyons, 461 U.S. at 105-06.

Where, as here, plaintiffs seek equitable relief, they must adequately plead the

requisite basis for such relief, or risk dismissal for lack of standing. See City of Los

Angeles v. Lyons, 461 U.S. 95, 111, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (finding no

standing for claim for injunctive relief because of the "speculative nature of Lyons' claim

of future injury...."). See also, Golden v. Zwickler, 394 U.S. 103, 108, 89 S.Ct. 956

(1969) (dismissing case for lack of standing where the "controversy" purportedly

---

[6] In relevant part, the Declaratory Judgment Act (DJA) provides that "any court of the United States...may declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

grounding declaratory judgment action was not sufficiently immediate to survive

dismissal).   The fact that Plaintiffs make their claims under the APA does not relieve

them of the obligation of showing that they are entitled to declaratory relief.  As stated

explicitly at 5 U.S.C. § 702, the APA does not affect "other limitations on judicial review

or the power or duty of the court to dismiss any action or deny relief on any other

appropriate legal or equitable ground."

Because "standing is challenged on the basis of the pleadings," the Court must

"'accept as true all material allegations of the complaint, and must construe the

complaint in favor of the complaining party.'" United States v. Vazquez, 145 F.3d 74, 81

(2d Cir.1998) (quoting Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343

(1975)).  Here, HUD contends that Plaintiffs have not proffered a proper basis for

standing for their declaratory relief claim.

**B.      Declaratory Relief and Speculative Future Harms**

Although declaratory relief is inherently prospective, a court may not adjudicate

abstract questions.  Without an actual controversy, a district court is without power to

grant relief.  Certain Underwriters at Lloyd's, London v. St. Joe's Minerals Corp., 90

F.3d 671, 675 (2d Cir.1996).   "The difference between an abstract question and a

'controversy' contemplated by the Declaratory Judgment Act is necessarily one of

degree, and it would be difficult, if it would be [at all] possible, to fashion a precise test

for determining in every case whether there is such a controversy." Id., 90 F.3d at 675

(citing Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510

(1941)).

There are signposts which guide the Court in distinguishing between imminent

future harms and those which are merely speculative. A controversy cannot be a mere possibility or probability that a person may be adversely affected in the future. <u>Dawson v. Dep't of Transp.</u>, 480 F.Supp. 351, 352 (W.D. Okla. 1979). A controversy "must be sufficiently real and immediate, allowing specific and conclusive relief... it must also be ripe for adjudication." <u>Dow Jones & Co., Inc. v. Harrods Ltd.</u>, 237 F.Supp.2d 394, 406 (citing <u>Pub. Serv. Cmm'n v. Wycoff Co., Inc.</u>, 344 U.S. 237, 244, 73 S.Ct. 236 (1952)). Importantly, "[t]he disagreement must not be nebulous or contingent but must have taken a fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on its adversaries, and some useful purpose to be achieved in deciding them." <u>Wycoff</u>, 344 U.S. at 244. Furthermore, courts should be wary of entering declaratory judgments when the suit interferes with an action already filed. <u>Apotex</u>, 386 F.Supp.2d at 551 (citing <u>Farrell Lines Inc. v. Columbus Cello-Poly Corp.</u>, 32 F.Supp.2d 118, 124 (S.D.N.Y. 1997)). They should also be wary of requests for declaratory relief that involve either "procedural fencing" or a "race to res judicata." <u>Dow Jones</u>, 346 F.3d at 359-60. "The anticipation of defenses is not ordinarily a proper use of the declaratory judgment procedure." (<u>28 U.S.C.A. § 2201</u> n. 613, 182 (1994) (citing <u>Hanes Corp. v. Millard</u>, 531 F.2d 585 (D.C. Cir. 1976) rev'd on other grounds, <u>Shearson/American Exp., Inc. v. McMahon</u>, 482 U.S. 220, 107 S.Ct. 2332, (1987)).

## III.   Application of Standing Doctrine

### A.   Does the Risk of Future Lending Predation Satisfy the Case or Controversy Requirement?

Plaintiffs assert several bases for standing to obtain declaratory relief. First, they contend that without a declaration compelling HUD to conduct meaningful monitoring

of the FHA mortgage insurance program, Plaintiffs will re-enter a housing market in which they will again be easy prey to predatory lenders. In the context of Plaintiffs' motion for injunctive relief in <u>Vaughn I</u>, this Court found that argument unavailing. In <u>Vaughn I</u> the Court held that Plaintiffs were not entitled to injunctive relief because they could not make the "substantial showing of a likelihood of success." <u>Vaughn I</u>, 293 F.Supp.2d at 214. Specifically, this Court noted:

> Taking all of Plaintiffs' allegations as true and drawing all reasonable inferences in their favor, Plaintiffs cannot meet the standard for a mandatory injunction. Plaintiffs assert that the irreparable harm is the increased likelihood that they will be victimized by predatory lending schemes in the future as they attempt to purchase homes. It is highly unlikely given Plaintiffs' recent experience with predatory lending that they will again becomes [sic] victims of this scheme. At most, the harm is speculative...

<u>Id.</u> at 214.

Plaintiffs urge reconsideration of the Court's prior decision since it relied upon "factual assumptions" for which there was "no evidentiary support in the record." (Pls.' Mem. 23). In essence, Plaintiffs assert that since the Court considers these questions from the posture of a Rule 12 motion to dismiss, it should presume all factual allegations of the complaint to be true. <u>Frazier v. Coughlin</u>, 850 F.2d 129 (2d Cir. 1988). At oral argument, counsel for Plaintiffs argued that they would prove that, barring declaratory judgment, Plaintiffs would bear an "unacceptable and intolerably higher risk of being deceived again." (Trans. 12-02-2005, 25:12-14).

Although the Court takes the facts in the Proposed Second Amended Complaint as true for purposes of this motion, it need not take as true speculation as to what might happen in the future, which is the basis for the Plaintiffs' claim. The Plaintiffs' Memorandum of Law makes this clear:

When this case has concluded, the plaintiffs will re-enter the same housing market in which they were originally victimized and which continues to be a magnet for predatory lending schemes. At such time, the plaintiffs will seek to purchase a home with the assistance of FHA mortgage insurance and may will find themselves without access to or ability to afford private legal counsel or other professional advice.

Moreover, because fraudulent schemes may take many different forms, they may not be recognizable to an unsophisticated consumer such as the plaintiffs in this case.

(Pls.' Mem. 23-24).

The foregoing passage makes clear that Plaintiffs are not alleging facts,[7] or "something that actually exists" (Black's Law Dictionary, 8th ed. 2004), but instead seek to prove the probability that some chain-of-events will occur. This is simply speculation. It is true that, "[t]he difference between definite, concrete and substantial controversies which are justiciable, and hypothetical, abstract or academic ones which are not justiciable, is one of degree, to be determined on a case by case basis." Dow Jones & Co., Inc. v. Harrods Ltd., 237 F.Supp.2d 394, (S.D.N.Y. 2002) (citing Muller v. Olin Mathieson Chem. Corp., 404 F.2d 501 (2d Cir. 1968)). However, Plaintiffs are only at risk if, by some combination of lack of sophistication, economic hardship, and other unforseen and unforeseeable circumstances, they attempt to purchase another home and are again taken advantage of by a predatory lender. For the harm to be likely, they must purchase in a "hot-zone" for predatory loans. They must again turn to HUD for financing. Despite their past experiences, they must again be fooled. HUD must fail to catch the discrepancy. They must be unable to obtain independent council to protect

---

[7] In this respect, Plaintiffs' reference to Weiss v. Wittcoff, 966 F.2d 109, 112 (2d Cir. 1992) and Frazier v. Coughlin, 850 F.2d 129 (2d Cir. 1988) is inapposite, since it is the Plaintiffs' speculative chain of inferences which cannot give standing to assert their claim against HUD. Both Weiss and Frazier stand for the unremarkable proposition that on a motion to dismiss, the Court must accept Plaintiffs' allegations of factual events that have occurred as true.

their interests.  "Such an accumulation of inferences is simply too speculative and conjectural to supply a predicate for prospective injunctive relief."  O'Shea, 414 U.S. at 497, 94 S.Ct. 669.

Plaintiffs' analogy to DeShawn is unavailing.  Unlike, DeShawn, the current case is not a class action.  The Court therefore does not consider any risk that there might be to others, similarly situated, who may fall victim to predatory loans if the declaratory relief is not entered.

This case is more similar to Shain v. Ellison, 356 F.3d 211 (2d Cir. 2004).  There, the Circuit considered an Article III standing challenge to the plaintiffs' proffered risk of future injury.  The Second Circuit held that a plaintiff who had been unconstitutionally strip-searched did not have standing to request injunctive relief from such policies in the future.  (Id.).  The Shain court found that the possibility that the plaintiff would again be harmed was simply based on too long a string of circumstances for the Court to exercise jurisdiction over the matter, concluding that "Shain was no more likely to be subject to misdemeanor arrest and detainment than any other citizen of Nassau County."  (Id., at 215).  The same can be said of the present claim.  To the extent that Plaintiffs may be victims of a similar scheme in the future, their risk is hardly distinguishable from that of the general population, unless this experience has made them more wary of such schemes in the future.

### B.   Does the Applicability of a Declaratory Judgment to an Underlying Foreclosure Action Satisfy the Case or Controversy Requirement?

Plaintiffs propose a second basis for finding an imminent risk of future harm. They contend that Banks and Mounsey have suffered "ongoing injury" resulting from

"the assignment of the mortgage by Consumer Home Mortgage under circumstances which allow the current assignee to cloak itself with the immunity of a "holder in due course." (Pls.' Mem. 21). Banks and Mounsey are alleged to currently be defendants in a mortgage foreclosure action initiated in Kings County Supreme Court. (Pls.' Mem. 22). They assert that, "in each of those cases, the current mortgage holder will claim to be a 'holder in due course'" and that "it is a virtual certainty that the current mortgagees will not only invoke holder in due course status, but will also invoke the fact that HUD insured the transactions in order to establish or support their claim to that status." (Id.). Plaintiffs contend that a declaration that HUD failed to conduct meaningful review of the loan applications will assist them in defeating that argument.

This argument fails for several reasons. First, it relies upon a chain of speculation on legal strategy in the foreclosure action. Plaintiff must predict that the mortgage holder will raise this defense and that it will bolster that defense by exclusively relying on the HUD insurance as proof of the bona fides of the original loan. It is possible that the harm may never come to pass. Second, even assuming that the defense was made, a declaration by this Court would not compel the state court to reject a mortgagee's assertion that it was a "holder in due course" and therefore not subject to any personal defenses Plaintiffs would have against the original mortgagee.

Even assuming that declaratory relief might assist Plaintiffs in their ongoing foreclosure action, under these circumstances it is wiser not to assert jurisdiction over this declaratory relief claim, since it would be better that Banks and Mounsey raise these arguments in the state forum. See Farrell Lines, 32 F.Supp.2d at 124. This is particularly the case when it appears that the request for a declaratory judgment is being

used in anticipation of defenses.  <u>See</u> Discussion, Part II.B., <u>supra</u>.  Thus, even if

jurisdiction could be properly grounded on the foreclosure issues in the underlying

action, this Court would exercise its discretion and decline jurisdiction.  HUD's motion

to dismiss is therefore granted.  Because Plaintiffs do not have standing to bring this

claim, the Court does not consider defendant HUD's other arguments.

## DEFENDANT SILVER'S MOTION FOR SUMMARY JUDGMENT

## BACKGROUND

**I.     The Events**

The following facts are taken from the First Amended Complaint.[8]  On January 8,

2001, while being represented by Ann McGrane, Esq., the Vaughns signed a contract of

sale for the purchase of 247 Cooper Street in Brooklyn from defendants JAS LLC and

FNNY.[9]  (<u>1st Am. Compl.</u> ¶64).  The copy of this contract of sale submitted to the court is

signed only by the Vaughns.  (<u>Wagner Decl.</u> Ex. E).  The purchase price was set at

$290,000.

The closing took place on February 9, 2002.  (<u>1st Am. Compl.</u> ¶ 111).  Then, for the

first time, the Vaughns met defendant Silver, who would act as their attorney at the

closing.  Silver was purportedly retained to represent the Vaughns by another member

of the alleged fraud, Gary Lewis, President of FNNY.  (<u>Id.</u> at ¶ 113).  Silver informed

Plaintiffs that he would represent them, but allegedly concealed certain pertinent

---

[8]  The proposed amendments in the Second Amended Complaint do not materially change the allegations made against defendant Silver, making it unnecessary to decide the motion to amend prior to this summary judgment motion.

[9]  Although FNNY purportedly held itself out as the owner of the property, plaintiffs allege that JAS LLC was the true owner of the property.  The contract of sale appears to substantiate this claim. (<u>Wagner Decl.</u>, Ex. E).  However, this question is not material to the present motion.

information, including that he had been retained by and was loyal to FNNY and/ or CHM.  (Id. at ¶¶ 115-7).  He also did not inform them that he had not reviewed the documents prior to the closing, but nevertheless indicated that they were "standard" and that the Vaughns should sign them.  (Id. ¶ 117-18).  The Vaughns contend that it is negligent for an attorney not to review closing documents prior to the closing date.  (Id. ¶ 119).  They also allege, amongst other things, that he concealed from Plaintiffs "the fact that the deed conveyed to plaintiffs was executed by, [sic] Gary Lewis, a person without such power or authority to do so" on behalf of JAS LLC, the alleged owner of the property.  (Id. ¶ 127).

## II.    The Arguments

Silver is named in several causes of action against which he now moves.  The clarity with which those causes of action are pleaded leaves something to be desired.  In the first cause of action for fraud, it is alleged that Silver was selected by the other defendants to act as the Vaughns' attorney as part of a scheme to get the Vaughns to purchase their home for "more than $125,000.00 over the amount [for which] the sellers purchased the premises…less than two months earlier."  (1st Am. Compl. ¶ 168). The Vaughns conclude that "[b]ut for the fraudulent misrepresentations, acts, omissions and acts of concealment of the defendants jointly and individually, the plaintiffs would not have continued with the purchase of 247 Cooper Street Brooklyn, New York or entered into any agreements thereafter."  (Id. ¶ 181).

In the third cause of action for breach of fiduciary duty or malpractice, the Vaughns contend that as their attorney and fiduciary, Silver was obligated to disclose to them any conflicts of interest, and that he "breached his fiduciary duty to the plaintiffs

and caused them to suffer actual damages in an amount in excess of $300,000..." (1st Am. Compl. ¶¶ 203-206).

In the fourth cause of action also stylized as breach of fiduciary duty and malpractice, the Vaughns contend that "Martin Silver, in providing legal counsel to the plaintiffs...utterly failed to meet the minimum standard of competence required of an attorney and constitutes professional malpractice." (Id. ¶¶ 211-12).

Finally, in the seventh cause of action, the Vaughns allege violations of N.Y.G.B.L. § 349. (Id. ¶¶ 224-225). N.Y.G.B.L. § 349 is a statute of general application that makes it unlawful for any person to perform "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." (§ 349(a)).[10]

Nowhere in the First Amended Complaint is a breach of contract claim alleged, or specific performance of the contract prayed for. Plaintiffs' prayer for relief includes requests for money damages "in excess of $300,000" including punitive damages and damages for harm to their credit standing, attorneys' fees, as well as rescission of all contracts and agreements regarding the purchase of the house. (Id. ¶¶ (A)-(H)).

Silver argues that the Vaughns have failed to show actual damages, an essential element of each of their remaining claims. Defendant points most notably to the Vaughns' concession that she has never made a single payment on the mortgage note that they gave to defendant CHM. (Silver's Notice of Motion, Ex. B "Deposition of Joy Vaughn," April 15, 2005, p. 67:10-16).

---

[10] It is well established that this statute provides a private right of action for any person alleging actual injury from such fraud or deceit. See, Blue Cross and Blue Shield of New Jersey, Inc. v. Philip Morris, Inc., 178 F.Supp.2d 198, (E.D.N.Y. 2001) judgment rev'd on other grounds, Empire Healthchoice, Inc. v. Philip Morris USA, Inc., 393 F.3d 312 (2d Cir., 2004).

Plaintiffs submit a document styled as a letter to defendant Silver's attorney entitled "21-Day Demand Pursuant to Fed. R. Civ. P. Rule 11(c)(1)(A) to Withdraw Defendant Martin Silver's Motion for Summary Judgment." (attached as Ex. G, <u>Wagner Decl.</u>), which the Court construes as Plaintiffs' response. In that response, Plaintiffs introduce a novel measure of damages not presented in the Complaint. Plaintiffs contend that they would currently have "good title to a legal three-family house," or alternatively would have sued for specific performance, had Silver fulfilled his obligations as their attorney, and they now seek to reclaim that amount as the measure of damages. Furthermore, they assert that the property is now worth substantially more than the original purchase price, citing several cases for the proposition that they are entitled to appreciation damages.[11] (<u>See</u>, <u>In the Matter of the Estate of Mark Rothko</u>, 43 N.Y.2d 305, 321-2 (N.Y. Ct. App. 1977) (allowing appreciation damages for property that has been sold by a trustee who had a specific duty to retain it); <u>Scalp & Blade, Inc. v. Advest</u>, 309 A.D.2d 219, 232 (4th Dept. 2003) (same)).[12] Plaintiffs do not assert any other theory nor proffer evidence of other damages.

### DISCUSSION

---

[11] Specifically, Plaintiffs Memorandum states:
Had Silver counseled and advised the Vaughns in an honest and loyal fashion, they would today have good title to a legal three-family house that had been repaired in compliance with applicable codes and regulations governing multiple dwellings in New York City. Even at the then inflated contract price of $290,000.00, the appreciated value of this property as a legal, 3-family multiple dwelling, would today exceed $450,000, and have a fair market value as high as $500,000. Thus, at a minimum, plaintiffs have suffered actual damages in an amount exceeding $250,000.00.
(<u>Wagner Decl.</u>, Ex. G, "Pls. Ltr. to McGowan," p. 3).

[12] The appreciation value theory supported by <u>Rothko</u> and <u>Scalp & Blade</u> contemplates instances in which a trustee failed to properly manage specific assets in a fund. The Court does not reach this question since the Vaughns fail to make a showing of damages for the claims they have pleaded.

## I.      Summary Judgment Standard

### A.      Fed. R. Civ. P. Rule 56

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  One of the principal purposes of summary judgment is to "isolate and dispose of factually unsupported claims or defenses..." Celotex Corp. v. Catrett, 477 U.S. 317, 323-4 (1986).

As an initial matter, "the moving party bears the burden of establishing the absence of any genuine issue."  Grabois v. Jones, 89 F.3d 97, 99-100 (2d Cir. 1996) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); FDIC v. Giammettei, 34 F.3d 51, 54 (2d Cir. 1994) (holding that movant for summary judgment must bear burden of production).  See also Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001); Higgins v. Baker, 309 F.Supp. 635 (S.D.N.Y.1970).  While the movant need not introduce evidence negating the opponent's claim, it must "point out to the district court that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once this has been presented, the non-moving party must produce a genuine issue of material fact, which exists when there is sufficient evidence favoring the non-moving party such that a jury could return a verdict in its favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  Therefore, the nonmoving party "may not rest upon the mere allegations or denials" of its pleadings; rather, it must go beyond the pleadings to "set forth specific facts showing that there is a genuine issue for trial."  Fed.

R. Civ. P. 56(e).  See also Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  In reviewing the record, the Court has "considerable discretion to conduct an assiduous review of the record in an effort to weigh the propriety of granting a summary judgment motion…" Monahan v. New York City Dept. of Corrections, 214 F.3d 275, 292 (2d Cir. 2000).

When evaluating a motion for summary judgment, "[t]he court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor." L.B. Foster Co. v. American Piles, Inc., 138 F.3d 81, 87 (2d Cir. 1998) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  If there remains no genuine issue of material fact then the moving party is entitled to judgment as a matter of law.

### B.   Local Civil Rule 56.1

Finally, Local Civil Rule 56.1 mandates that, "(a) Upon any motion for summary judgment…, there shall be annexed to the notice of motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried."  Moreover, "(b) The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried."  Importantly, "(c) All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."

Defendant Silver has submitted a proper 56.1 Statement, but the Vaughns fail to provide a separate counter statement.  Therefore, the Court will consider Silver's

statement of facts to be admitted for the purposes of this motion.

## IV.  Actual Damages Standards for Fraud, N.Y.G.B.L. and Malpractice Claims

### A.  Fraud and N.Y.G.B.L. § 349 Claims

The fraud and N.Y.G.B.L. § 349 claims require, as an element of the prima facie case, that plaintiff make a showing of actual damages.  See, United Artists Theatre Circuit, Inc. v. Sun Plaza Enterprise Corp., 342 F.Supp.2d 342, 351 (E.D.N.Y. 2005) (fraud elements are (1) defendant makes a material false representation, (2) defendant intended to defraud plaintiff thereby, (3) plaintiff reasonably relied upon the representation, and (4) plaintiff suffered actual damages); New York Univ. v. Continental Ins. Co., 87 N.Y.2d 308, 318 (1995) (under New York law, the essential elements of fraud are "representation of a material existing fact, falsity, scienter, deception and injury") (citations omitted).  See also General Business Law §§ 349 & 350; New York Univ. v. Continental Ins. Co., 87 N.Y.2d 308 (1995) (prima facie § 349 case requires that plaintiff show actual damages); Donahue v. Ferolito, Vultaggio & Sons, 13 A.D.3d 77, 78 (1st Dep't 2004) (case under the statute dismissed for failure to establish actual damages).

The Vaughns' response to Silver's motion deals exclusively with Silver's alleged failure to secure good title for them to the Cooper Street home due to both "disloyalty and malpractice."  (Wagner Decl., Ex. G).  It does not explicitly address either the fraud or § 349 claims, and is at odds with the theory of the First Amended Complaint, which is that Plaintiffs were induced to sign the contract, which they signed when represented by McGrane--not Silver, and not that Silver's either intentional or negligent failures as their

lawyer caused them to forego performance of it. It would thus appear that they have abandoned the fraud and N.Y.G.B.L. § 349 claims as to Silver, justifying the grant of summary judgment. <u>City of New York v. Minetta</u>, 262 F.3d 169, 181 (2d Cir. 2001). <u>See also</u> <u>General Motors Corp. v. Villa Marin Chevrolet, Inc.</u>, 2000 WL 271965, *14 (E.D.N.Y. 2000) (claims not supported in a response deemed abandoned).

### B. Malpractice Claim

_____ As a matter of law, Plaintiffs must plead damages as a prima facie element of a malpractice claim. <u>Between the Bread Realty Corp. v. Salans Hertzfeld Heilbronn Christy & Veiner</u>, 290 A.D.2d 380, 381 (1st Dep't 2002) (legal malpractice requires showing of (1) negligence of the attorney, i.e., that the attorney failed to exercise that degree of care, skill and diligence commonly possessed by a member of the legal profession (2) that was the proximate cause of the loss sustained, and (3) proof of actual damages) (citing <u>Prudential Ins. Co. of America v. Dewey, Ballantine, Bushby, Palmer & Wood</u>, 170 A.D.2d 108, 114 (1991); <u>aff'd</u> 80 N.Y.2d 377). In a legal malpractice case, the measure of damages is the value of the claim lost because of the attorney's malpractice. <u>Campagnola v. Mulholland, Minion & Roe</u>, 76 N.Y.2d 38, 42 (1990).

Finally, a party who has been fraudulently induced into purchasing real property may seek damages based upon what the property would have been worth had the fraudulent representations been true. <u>BGW Development Corp. v. Mt. Kisco Lodge No. 1552 of the Benevolent and Protective Order of the Elks</u>, 247 A.D.2d 565, 568-9 (2d Dep't. 1998) (This measure of "loss of bargain" damages is the "difference between the market value of the property and the amount unpaid on the purchase price.") (citing <u>Conger v. Weaver</u>, 20 N.Y. 140 (Ct. App. 1859); <u>Mokar Props. Corp. v. Hall</u>, 6 A.D.2d

536, 539-40.  This longstanding rule was announced as early as 1884 in <u>Krumm v. Beach</u>, 96 N.Y. 398, 406 (1884), where it was held that a vendee might seek the full fruit of his bargain in the form of damages equal to the value of what he would have been able to obtain through specific performance if the defendant's fraudulent representations had been true.  (<u>Id.</u>).

Plaintiffs' opposition offers an unpleaded legal theory: that absent Silver's negligent and/or intentional misrepresentations and his failure to alert them to the possibility of suing for specific performance, they would have been able to enforce their contract, and should thus be entitled to the present day value of the property as damages.[13]  The First Amended Complaint provides no notice of such a claim–there is no breach of contract claim, nor is there an assertion that because of Silver's negligence they failed to attempt to enforce the agreement–to the contrary, the First Amended Complaint alleges that through both an intentional fraud and negligence Silver facilitated their purchase of the Cooper Street property.  Indeed, the only remedies requested against the non-HUD defendants are for damages, both actual and punitive, and rescission of the agreement.  The Court does not consider this argument since it does not support the claims made in the First Amended Complaint.

There is an independent basis for granting Silver's summary judgment motion. The Vaughns must prove at trial the market value of the property at the time of breach in order to obtain loss of bargain damages.  (<u>BGW</u> 247 A.D.2d at 569).   Plaintiffs,

---

[13]  The letter containing Plaintiffs' arguments states that "Martin Silver, acting in bad faith and in collusion with Gary Lewis and FNNY, not only concealed from the Vaughns that the title was defective and the building was not a legal three-family dwelling, but also intentionally failed to advise them of their right to the full benefit of their bargain by bringing an action for specific performance." (<u>Wagner Decl.</u>, Ex. G, pp. 2-3).

however, fail to provide any evidence at all as to the value of the property at the time of the sale or afterwards. Plaintiffs' opposition brief contends that the home must be worth at least $450,000 today. (Wagner Decl., Ex. G). As a comment on the present value of the property it is irrelevant to the value at the time of breach. It is also conclusory. A conclusory statement, unsupported by evidence, is insufficient to survive a motion for summary judgment. Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993).

Finally, Plaintiffs contend that they would have been building equity during this period had the representation been true, but instead have been forced to pay rents. The Vaughns also asserted in oral argument that they would have earned rental income from this property. Both of these arguments, unsubstantiated by any evidence, are speculative, and cannot serve as proof of the damages element of their claim. See, e.g., Lombardi v. Giannattasio, 595 N.Y.S.2d 812 (2d Dep't 1993).

Taking Plaintiffs' allegations as true, it would appear that Silver, a licensed attorney, may have gone beyond the bounds of mere malpractice. Here, he is accused of defrauding his client. It may be that such behavior, if proven, merits disciplinary action. Nevertheless, when the elements of a legal claim require a plaintiff to show actual damages resulting from that claim, that requirement is not satisfied by allegations of tortious, immoral or unethical behavior.

Although the record does not clearly supply the Court with the partial resolution of the dispute amongst these parties, it reflects that the Vaughns have been released from all past and future obligations on the home. (Def. Silver's 56.1 Stmt. ¶¶ 5, 6); (Trans. 12-02-2005, 44:23-45:25) (Vaughns transferred their interest in the property via

a quit claim deed to ABN AMRO Mortgage Group). The Vaughns' papers indicate that their counsel was able to "get the mortgage and note forgiven." (<u>Wagner Decl.</u>, Ex. G, p. 4). As stated earlier, Plaintiffs accepted an offer of judgment that provided them with $500,000 from several settling defendants. If it were true that this settlement did not make Plaintiffs whole, they were obligated by Silver's motion to inform the Court of any additional actionable damage they may have suffered. The failure to do so requires that summary judgment be granted.

## PLAINTIFFS' MOTION TO AMEND THE COMPLAINT

Plaintiffs seek leave to amend their First Amended Complaint to add the Tanen proposed defendants and Cooper proposed defendants, asserting claims against them for aiding and abetting defendants' fraudulent scheme and for violation of N.Y.G.B.L. § 349. Peter D. Cooper was the managing member, and Sloan Cooper managed the day-to-day operations, of JAS. (<u>1st Am. Compl.</u> ¶ 11). JAS, through Sloane Cooper, invested in at least twenty properties which were marketed and sold by FNNY. (<u>Wagner Decl.</u>, Ex. E). Jeffrey Tanen and his law firm represented JAS through the filing of the complaint in this matter. (<u>Wagner Decl.</u> ¶¶ 7-8). JAS provided the financing for FNNY's purchase of distressed property in return for the payment, in the case of the home purchased by plaintiffs, of eighteen percent interest on the loan extended by JAS. (<u>Wagner Decl.</u>, Ex. E). Neither the Cooper proposed defendants nor any other party to the case objects to the Proposed Second Amended Complaint. The Tanen proposed defendants, however, do object.

The Court need not reach their arguments, however, since the claims asserted against the Tanen proposed defendants are based upon the same transactions and

events as those asserted against Silver.  Since Plaintiffs have failed to show actual damages, a prima facie element of both of claims against them, any amendment to add the Tanen Proposed Defendants would be futile.  "Futility" is a valid reason for denying a motion to amend when it is "beyond doubt that the plaintiff[s] can prove no set of facts in support of their amended claims."  <u>Ricciuti v. N.Y.C. Transit Auth.</u>, 941 F.2d 119, 123 (2d Cir. 1991) (internal quotation marks omitted).

Although the Cooper proposed defendants do not oppose the motion, it is clear that any amendment to include them on these claims at this stage would also be futile, and so the motion for leave to amend the First Amended Complaint is denied in its entirety.

## <u>CONCLUSION</u>

Since the court cannot not grant declaratory relief, defendant's motion to dismiss based on lack of subject matter jurisdiction must be granted.  Because the Vaughns have made no showing of actual damages, defendant Silver's motion to for summary judgment is granted.  Finally, because a second amendment to the complaint would be futile it is denied.

SO ORDERED.

Dated:      August 3, 2006
           Brooklyn, New York

_____/s/_____
I. Leo Glasser
United States District Judge

On this day, copies of the foregoing were sent electronically to:


Richard J. Wagner
Brooklyn Legal Services Corp. 'A'
80 Jamaica Avenue
Brooklyn, NY 11207

Hugh A. Zuber &
Peter A. Cross
Jacob, Medinger & Finnegan, LLP
1270 Avenue of the Americas
New York, NY 10020

Attorneys for Plaintiffs


Edward K. Newman
United States Attorney's Office
1 Pierrepont Plaza
Brooklyn, NY 11201

Attorney for HUD


Michael F. McGowan
Boundas Skarzynski Walsh & Black LLC
One Battery Park Plaza
Floor 22
New York, NY 10004

Attorneys for defendant Martin Silver, Esq.


James G. Ryan
Cullen and Dykman LLP
100 Quentin Roosevelt Boulevard
Garden City, New York 11530-4850

Attorneys for Jeffrey Tanen, Esq. and Bank Tanen and Bank, P.C.


George G Coffinas
Coffinas & Coffinas LLP

275 Madison Avenue
New York, NY 10016

Attorneys for the Foreclosure Network of Metro New York


Robert Mauer
1205 Franklin Avenue
Garden City, NY 11530

Attorney for Charles Salva and Charles Salva Appraisals, Inc.


Joseph M. Pastore, III
Brown Raysman Millstein Felder and Steiner, LLP
900 Third Avenue
New York, NY 10022

Attorneys for ABN AMRO Mortgage Group, Inc.