UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
PAULETTE VAUGHN and JOY VAUGHN,

                            Plaintiffs,

      -against-

CONSUMER HOMES MORTGAGE, INC.(CHM), THE
FORECLOSURE NETWORK OF NEW YORK, INC.
(FNNY), MICHAEL ASHLEY, individually and in his
capacity as an officer and/or substantial shareholder of        01-CV-7937(ILG)(MDG)
CHM, JAS PROPERTY SERVICES, a/k/a/ JAS, LLC,
ABN AMRO MORTGAGE GROUP, as assignee and
successor to CHM, MICHAEL PARKER, individually
and in his capacity as officer/employee of CHM, GARY
LEWIS, individually and as President of FNNY, JOSHUA
SMILING, CHARLES SALVA APPRAISALS, INC.
CHARLES SALVA, MARTIN SILVER, ESQ., ANN
McGRANE, ESQ., KENNETH GOLDEN,E ESQ., and
MEL MARTINEZ as Secrertary of the UNITED STATES
DEPARTMENT OF HOUSING AND URBAN
DEVELOPMENT.

                            Defendants.

--------------------------------------------------------------------X

                     **MEMORANDUM OF LAW IN SUPPORT OF**
                     **MOTION FOR RECONSIDERATION PURSUANT**
                     **F.R.C.P. §59(e) AND LOCAL RULE 6.3**

**PRELIMINARY STATEMENT**

The instant motion for reconsideration is made pursuant to F.R.C.P. §59(e) and Local Rule 6.3, and assumes, for purposes of brevity, that the facts are as pleaded and as set forth in the in the various statements of fact and other papers submitted by plaintiffs in opposition to the HUD motion to dismiss and the Silver motion for summary judgment.

Insofar as the denial of the Vaughns' motion to amend the complaint to add additional parties was based in its entirety on the Court's determination of the Silver motion for summary judgment, we ask that to the extent that the Court may grant reconsideration of the Silver motion and, upon reconsideration, deny his motion for summary judgment, that the Court should in that event also reconsider the Vaughns' motion to amend and grant that motion as well.

The grounds for the instant motion for the Court to reconsider its decision granting HUD's motion to dismiss for lack of standing are: 1) that the Court misconstrued the factual basis on which the plaintiffs were basing their claim to standing; 2) that the Court did not apply controlling Second Circuit case law to the issue of standing in such race discrimination cases as these; and 3) that the Court did not consider the effect of the Supreme Court's decision in *Gratz v. Bollinger, et al.*, 539 U.S. 245, 123 S.Ct. 2411 at 2414-15 (2003) in relaxing the test for standing expressed in *City of Los Angeles v. Lyons,* 461 U.S. 95 (1983) in race discrimination cases.

The grounds for the instant motion for the Court to reconsider its decision granting Silver's motion for summary judgment is that the Court misapprehended or overlooked substantial evidence of damages that was set forth in the record, including transcripts of the Vaughns' deposition testimony, and misconstrued the method of measuring damages, and

specifically the Vaughns' claim for "appreciation" damages, as requiring a separate, unpleaded claim for breach of contract and specific performance.

## POINT I

**IN GRANTING HUD'S MOTION TO DISMISS, THE COURT DID NOT APPLY THE SECOND CIRCUIT'S TEST FOR STANDING IN RACE DISCRIMINATION CASES NOR CONSIDER THE EFFECTS OF THE SUPREME COURT'S DECISION IN *GRATZ V. BOLLINGER* REGARDING THE NATURE OF THE INJURY IN SUCH CASES**

A. **The Denial Of Equal Treatment Is the Injury In Fact For Purposes Of Standing In Cases Involving Race Discrimination.**

The Plaintiffs respectfully suggest that the Court's Memorandum & Order (hereinafter "Order"), at pp. 13-14, demonstrates that it misconstrued the facts of which the Plaintiffs were actually complaining when it characterized them, even for purposes of a motion to dismiss, as "...speculation as to what might happen in the future..."(Order at p. 13) and as a "...speculative chain of inferences which cannot give standing..." (Order at p. 14, fn.7).[1]

The facts of which the Plaintiffs complain, and which give them standing to maintain this action for equitable relief against HUD, are *not* the facts which the Court characterizes as speculative, but rather facts which are certain and undisputed for purposes of this motion. Specifically, as quoted in the Court's decision, the plaintiffs complained that when they re-enter the housing market they will bear an "unacceptable and *intolerably higher risk* of being deceived again." (Order at p. 13). As was argued in the plaintiffs' Memorandum of Law in Opposition to HUD's motion to dismiss, HUD, by *disregarding* its duties under Title VIII to administer its

---

[1] Neither the Court's Order nor HUD's motion disputes the intention of at least one of the plaintiffs in both *Vaughn* and *Banks* to re-enter the housing market and search for a new home financed by FHA-mortgage insurance.

3

programs, including its mortgage insurance program, in a fashion to prevent and prohibit race discrimination, creates an environment where "hot zones" of predatory lending exist in which minority home buyers are targeted.

It is *not,* as the Court's Order seems to assume, the speculative fact that plaintiffs may or may not be victimized again on which plaintiffs rely for standing, but rather the fact that *because of HUD's routine issuance of mortgage insurance to those who discriminate against minorities,* minorities, including plaintiffs, cannot compete for federally insured mortgages without bearing a significantly higher risk of being targeted for fraud**.** Because HUD effectively acts as an "enabler"of defendants such as Consumer Home Mortgage (and its current successor in interest, Lend America, Inc.) to target minority home buyers for unfair, inflated, and unaffordable mortgages, in violation, *inter alia,* of the Equal Credit Opportunity Act, by its practice of rubber stamping mortgage insurance policies, it prevents those in search of FHA-insured mortgages[2] from seeking them on an equal footing with non-minorities with regard to the risks of fraud they must face.

The position advanced by HUD in moving to dismiss is *not* that it discharges its duty to affirmatively manage its programs so as to prevent race discrimination by lenders such as Consumer Home Mortgage. Nor does it contest that the practice known as predatory lending includes the targeting of minority, first-time home buyers or that minorities are faced with a significantly greater risk of being victimized than white borrowers. Rather, HUD's position is

---

[2]The purpose served by the FHA-mortgage insurance is to permit home buyers to pay a small insurance premium to HUD in lieu of making a 20% or greater down payment, which would take the purchase of a home out of the reach of those who, like plaintiffs, could not afford such down payments.

that it has no *enforceable* duty to combat race discrimination in its programs under Title VIII and that, in any event, no individual plaintiff would have standing to sue HUD because it would necessarily fall into one of two classes of person, neither of which would meet the test for future injury set forth in *City of Los Angeles v. Lyons, supra.* On the contrary, HUD essentially asserts that every potential plaintiff's claim would fail because they were either already injured (i.e., "past injury"), or they have not yet injured and are unable to prove that they *would* be injured (i.e., "future injury"). However, the plaintiffs' injury for purposes of establishing its standing to sue HUD in these actions is *not* that they would be victimized a second time by a predatory lender offering FHA-insured mortgages, but rather that they would be forced to seek the benefit of this federal program on *unequal footing* with white borrowers who have *not* routinely been racially targeted predatory lenders.

It is plaintiffs' contention in this motion to reconsider that the controlling test for standing in this case is not *Lyons* test, but rather the test first expressed in *Comer v. Cisneros,* 37 F.3d 775, (2d Cir., 1994). In *Comer,* certain plaintiffs alleged that a municipal housing authority and HUD discriminated against them, in violation of the Equal Protection Clause and several federal statutes, in administering the Section 8 housing subsidy program. Specifically, one of the plaintiffs alleged that HUD and the housing authority, *in their administration of the program,* erected barriers that effectively made it more difficult for low-income minorities to obtain housing benefit than for non-minorities. The Second Circuit, holding that the plaintiffs *had* standing to sue, found that "...the 'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, *not the ultimate inability to obtain the benefit.*" (*id.* at 791). In the same case, with respect to another named plaintiff, the

5

Court in *Comer* held that an individual who challenged a suburban community's "local preference" policy for giving Section 8 vouchers had standing despite the fact that he was so far down on the waiting list that he was unlikely *ever* to receive a voucher. In rejecting the claim that this individual had no standing, the Court held that the "...injury is not the failure to obtain housing assistance in the suburbs, but is the missed opportunity to compete for suburban housing on an equal footing with local residents." (*id.* at 794).

In *Comer, supra*, the Second Circuit set forth the following three-pronged test for standing: "(1) there exists a reasonable likelihood that the plaintiff is in the disadvantaged group, (2) there exists a government erected barrier, and (3) the barrier causes members of one group to be treated differently from members of the other group." (*id.* at 793).

The Second Circuit has repeatedly reaffirmed this test for standing. Thus, the Second Circuit in *Able v. United States,* 88 F.3d 1280, 1291 (2d Cir., 1996), applying the *Comer* test to homosexuals challenging certain military policies, cited the Supreme Court's decision in *Northeastern Florida Chapter of Associated Gen. Contractors v. City of Jacksonville,* 508 U.S. 656, 666, 113 S.Ct. 2297, 2303(1993), which held that in race discrimination cases, "the 'injury in fact'...is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." (See also, *Lewis v. Thompson,* 252 F.3d 567, 590 (2d Cir. 2001); *Thomas v. City of New York*, 143 F.2d 31, 36 (2d Cir., 1998).

Clearly, if applied to the *Vaughn* and *Banks* claims against HUD, the *Comer* test would certainly be satisfied. First, there is no dispute that the racial targeting of minorities is one of the

6

central features of the epidemic of predatory lending[3], and that the plaintiffs, as minorities who wish to pursue home ownership with the assistance of FHA-insured mortgage, obviously would fall within the 'disadvantaged group'. The "barriers" being erected by HUD, and which prevent the plaintiffs from seeking FHA-insured mortgages on an "equal footing" with non-minority borrowers, are *both* HUD's own failure to seek out and prevent racially discriminatory practices by its "direct endorsement" lenders, *and* its routine issuance and rubber stamping of mortgage insurance policies to those its knows, or should know, discriminate against minority borrowers by targeting them for unfair, inflated, and unaffordable loans. This fact satisfies the second prong of the *Comer* test. Finally, it is self-evident that by both ignoring the racial targeting and by approving mortgage insurance applications of lenders such as Consumer Home Mortgage, minorities will face a fundamentally different and far riskier process of purchasing homes with FHA-insured mortgages than non-minorities. Therefore, all three prongs of the *Comer* test for standing are met, and the plaintiffs' standing to pursue its equitable claims against HUD should be deemed established.

### B. The Supreme Court's Holding In *Gratz v. Bollinger* Substantially Relaxed The Rigid Strictures Regarding Standing Imposed By *City of Los Angeles v. Lyons*

On December 15, 2005, shortly after oral argument was had in this case, counsel for plaintiffs submitted a letter Memorandum to the Court on the issue of standing, citing the fact that both plaintiffs and HUD, in their respective briefs, had concentrated principally on the issues arising from HUD's assertion that *Norton v. Southern Utah Wilderness Alliance,* 124 S.Ct. 2373

---

[3]Indeed, one of the demographic characteristics of HUD's "hot zones" for predatory lending is the fact that these "hot zones" are invariably located in urban communities with a high concentration of racial minorities.

7

(2004) rendered unenforceable the anti-discrimination mandate of Title VIII.. Because plaintiffs' counsel had not anticipated the Court's focus at argument on the issue of injury and standing, it submitted a supplemental letter memorandum of law which addressed standing in greater detail, concentrating on the Supreme Court's decision in the case of *Gratz v. Bollinger, et al.,* 539 U.S.245, 123 S.Ct. 2411, 2414-15 (2003).

As the Court's Order granting HUD's motion makes no mention at all of the issues raised in that supplemental letter memorandum, particularly as it pertains to the Supreme Court's holding in *Gratz, supra* regarding standing in race discrimination cases, plaintiffs concern is that the post-argument letter memorandum of December 15, 2005 may have been overlooked.[4]

This issue of the effect of *Gratz* on standing issues, and the extent to which that case has relaxed the exceedingly rigid standing test of *City of Los Angeles v. Lyons,* 461 U.S. 95 (1983) and its progeny, on which this Court's Order seems to rely, has been recently addressed by District Courts *since* the December 15, 2005 letter referred to above. Thus, in recently decided cases such as *Norflet v. John Hancock Financial Services, Inc.,* 422 F.Supp 2d 346, 352-53(D. Conn.,March 27, 2006); *Save Our Schools - Southeast & Northeast v. District of Columbia,* 2006 WL 1827654, at *4 (D.D.C., July 3, 2006); and *Friery v. Los Angeles Unified School District*, 448 F.3d 1146, 1148(9th Cir., May 24, 2006), the Courts all recognize that the decision in *Gratz* clearly affected the test by which standing is determined in race discrimination.

Certainly, the heart of this conclusion arises from the *Gratz* majority's <u>rejection</u> of the dissent's somewhat ironic invocation of the *City of Los Angeles v. Lyons* test to circumstances in

---

[4] The letter memorandum of December 15, 2005 was electronically filed and is part of the record in regard to the HUD motion to dismiss.

which the injury involves competing for a benefit on a racially based "unequal footing", and concentrates instead on the *Gratz* having to demonstrate an almost certain inability to obtain the benefit (admission to the University of Michigan) itself. Instead of applying the *Lyons* test, Justice Rehnquist essentially adopted the Second Circuit test in *Comer, supra.*

For the reasons stated above, plaintiffs respectfully urge this Court to reconsider its Order and, upon reconsideration, to apply to the issue of standing the tests utilized in *Comer* and *Gratz*. If this test for determining standing is fairly and reasonably applied to the *Vaughn* and *Banks* claims against HUD, it is respectfully suggested that HUD's motion to dismiss should be denied.

## POINT II

**THE COURT MISCONSTRUED THE FIRST AMENDED VERIFIED COMPLAINT AS INCONSISTENT WITH A THEORY OF APPRECIATION DAMAGES**

The Vaughns have pleaded causes of action against Silver for fraud, for violations of the New York Deceptive Practices Act (NYGBL 349),[5] and for malpractice. The only element of

---

[5] The Court concluded that the "Vaughns' response to Silver's motion deals exclusively with Silver's alleged failure to secure good title for the to the Cooper street home due to both 'disloyalty and malpractice' … It would thus appear that they have abandoned the fraud and NY GBL.§ 349 claims as to Silver, justifying the grant of summary judgment." Order at 23-24. The Vaughns respectfully submit that their response was explicitly addressed to the damages they suffered as a result of Silver's fraudulent misrepresentations that induced them to consummate the purchase of the subject property in a dilapidated condition that was unlawful for occupancy. See Exhibit G annexed to Declaration of Richard J. Wagner in Opposition, dated Aug. 24, 2005, at 4 ("[But for] Silver's 'breach of trust,' *as well as his connivance and collusion with Lewis, FNNY and other defendants in the fraudulent scheme,* the Vaughns would own [a properly renovated and legal 3-family home] today.") (emphasis added).

The Court also misconstrues the Vaughns' fraud and NY.GBL. § 349 claims as concerning only the contract of sale for the subject property. Order at 23. However, as the Court itself notes, the Vaughns allege in their complaint that "[b]ut for the fraudulent misrepresentations, acts, omissions and acts of concealment of the defendants jointly and individuals, the plaintiffs *would not have continued* with the purchase of [the subject

these three causes of action at issue in Silver's motion for summary judgment was the common element of actual damages. Indeed, for the purposes of his motion for summary judgment, Silver did not contest the underlying factual allegation in the Vaughns' First Amended Verified Complaint that Silver conspired with the other defendants fraudulently to induce the Vaughns' purchase of the subject property. Instead, Silver, having set forth each and every of the Vaughns' 17 allegations concerning him, argued that "[e]ven if one accepts each of these 'factual' allegations in plaintiffs' First Amended Verified Complaint as true … plaintiffs still cannot establish, with sufficient specificity, that they have suffered actual damages." See Memorandum of Law in Support of Martin Silver's Motion for Summary Judgment at 5.

In their reply to Silver's summary judgment motion, the Vaughns argued that *because of Silver's fraud, malpractice and deceptive practices* they have suffered actual damages as a result of their failure to receive the *benefit of their bargain* in the subject transaction, namely *good* title to a *fully and lawfully* renovated *legal* three-family home containing a *lawful* rental unit. The Vaughns argued in opposition to Silver's motion that, but for Silver's intentional acts of fraud and breach of fiduciary duty, they would today have good title to a fully renovated, legal three-family house, and that the proper measure of damages to which they are entitled are the "appreciation" damages authorized by New York's Court of Appeals for such breaches of fiduciary duty. See *In the Matter of the Estate of Mark Rothko, 42 NY2d 305, 321-22(Ct. Of App.,*

---

property] …" Order at 18 (citing Joy and Paulette Vaughn's First Amended Verified Complaint at ¶ 181) (emphasis added). Plaintiffs thus allege that Silver's fraudulent misrepresentations induced them to continue with the purchase after the execution of the contract and *to proceed with the closing* rather than pursue breach of contract claim seeking the remedy of specific performance.

    The Vaughns therefore respectfully request that the Court reconsider its grant of summary judgment on their fraud and N.Y.G.B.L. §349 claims against Silver.

*1977).*

In its memorandum and order, it is respectfully suggested that the Court misconstrued these appreciation damages as inconsistent with the Vaughns' malpractice/breach of fiduciary duty claim. Specifically, the Court states that the Vaughns' First Amended Verified Complaint contains "no breach of contract claim, nor is there an assertion that because of Silver's negligence they failed to attempt to enforce the agreement – to the contrary, the First Amended Complaint alleges that through both an intentional fraud and negligence Silver facilitated their purchase of the Cooper Street property." Order at 25.

The Vaughns respectfully submit that their allegation that Silver facilitated the purchase of the subject property through intentional fraud and/or negligence necessarily implies that Silver intentionally concealed from the Vaughns the legally appropriate alternative to proceeding with the closing, namely suing the seller for specific performance and, thereby, acquiring the benefit of their bargain described above. Indeed, by naming Silver as a co-conspirator in the fraudulent scheme, the First Amended complaint is replete with allegations that Silver's role in the conspiracy was to conceal defects in the transaction, assure them that everything was in order and the Vaughns rights and remedies with respect to these defects. (See, e.g., ¶¶s 12- and 122 of the First Amended Complaint). This implication is a "reasonable inference" which must be drawn in the Vaughns' favor on a motion for summary judgment. See Order at 22 (citing L.B. Foster Co. v. American Piles, Inc., 138 F.3d 81, 87 (2d Cir. 1998)). To the extent that the Court granted Silver's motion for summary judgment on the ground that appreciation damages are inconsistent with the Vaughns' First Amended Verified Complaint, the Vaughns respectfully request that the Court reconsider its decision.

11

As the Court noted, "a party who has been fraudulently induced into purchasing real property may seek damages based on what the property would have been worth had the fraudulent representations been true." Order at 24 (citation omitted). As alleged in the Vaughns' First Amended Verified Complaint, Silver conspired with the other defendants to fraudulently induce the Vaughns to purchase the subject property in a dilapidated condition that violated various provisions of the New York City Administrative Code. The Vaughns seek damages from Silver based on what they would have obtained through their purchase of the subject property, i.e., the benefit of their bargain if *either* the defendants had actually kept their promises *or* Silver had not intentionally concealed their rights from them. Silver's concealment gave them instead the false choice of going through with the deal as is or walking away from the deal altogether, rather than suing for breach of contract and specific performance *when such claim would still have been timely, i.e. before the contract merged with the execution of the deed and the claim was lost.* Thus, the Vaughns, as part of the benefit of their bargain, would not only have good title to a fully renovated three-family home, but would also have obtained a stream of lawful rental income and, instead of paying rent, would have been building equity in their home.

The Court acknowledged that "plaintiffs contend that they would have been building equity had [Silver's] representation been true, but instead have been forced to pay rents." Order at 26. The Court further noted that "[t]he Vaughns also asserted in oral argument that they would have earned rental income from this property." Id. However, the Court the rejected both of these arguments on the sole ground that "[b]oth arguments, unsubstantiated by any evidence, are speculative, and cannot serve as proof of the damages element of their claim." Id.

12

The Vaughns respectfully submit that both claims – that the Vaughns would have obtained rental income from a legal, fully renovated rental unit and that they have continuously been paying rent for their housing since the closing of the subject property – are supported by evidence in the record before the Court on Silver's motion for summary judgment. Specifically, these claims are supported by the deposition testimony of Paulette and Joy Vaughn and by the deposition testimony of Martin Silver himself, the transcripts of which were all annexed as exhibits to papers filed and submitted to the Court.

Both of the Vaughns testified that they have been paying rent for their homes since the time of the closing of the subject property. At her deposition, Paulette Vaughn gave the following testimony:

> Q. Your current apartment that you live in, do you own that or rent that?
> A. Rent.
>
> ***
>
> Q. The apartment that you live in, is that the only apartment that you lived in since the closing?
> A. Yes.

See Deposition of Paulette Vaughn, April 25, 2006, annexed as Exhibit C to Martin Silver's Notice of Motion, at 161:18-20; 162:11-14. Paulette Vaughn indicated that she has lived in her current apartment, 41 Schermerhorn Street in Brooklyn, for approximately five years. Id. at 6:9 – 21. Paulette Vaughn also testified that she rented her previous apartment at 114 Patchen Avenue in Brooklyn, where she lived for approximately four years. Id. at 7:5 – 19; 205: 4 – 6. Similarly, Joy Vaughn testified that she has lived in three different homes over the course of the last nine

years and that she has rented each of them. See Deposition of Joy Vaughn, April 15, 2006, annexed as Exhibit B to Martin Silver's Notice of Motion, at 11:11 – 13:14.

The Vaughns also testified that they purchased the subject property with the intention of renting out one of the separate residential units, which, as a result of the defendants' fraudulent representations, they believed to be a lawful rental unit. At her deposition, Joy Vaughn gave the following testimony:

> Q. Did you and/or your mother, with your knowledge, have any intent of renting any portion or portions of the house after the closing?
> A. Yes.

Id. at 134:12 – 16. Paulette Vaughn testified that, based on the fraudulent misrepresentations of the defendants, she believed she could obtain $1400 in monthly rental income from the subject property. See Deposition of Paulette Vaughn at 185:7 – 15. Finally, Martin Silver himself testified that he assumed the Vaughns would obtain rental income from the subject property:

> Q. Now, the Vaughn purchase involved a building that was configured for three families to occupy. Did you understand at the time of the closing that the Vaughns intended to rent out one of the apartments?
> A. Well, I would believe anyone buying a three-family or a two-family house would be renting out something, yes. I don't recall exactly speaking or discussing that with the Vaughns at the closing, no.

See Deposition of Martin Silver, April 18, 2005, annexed as Exhibit C to Richard J. Wagner's Declaration in Opposition, dated August 24, 2005, at 143:5 – 14. However, despite the defendants' promises to convey title to a fully renovated, three family house, the subject property was not delivered in "liveable condition" and consequently the Vaughns did not obtain any rental income from the subject property. See Deposition of Joy Vaughn at 129:10 – 23; 133: 18 – 21.

14

Thus, there was substantial evidence in the record before the Court that the Vaughns, instead of building equity in their home, have been continuously paying rent since the subject transaction; and that, had the defendants conveyed good title to a legal three family home, the Vaughns would have rented out one of the separate dwelling units and thereby obtained rental income. The Vaughns submit that the above cited evidence is "sufficient ... such that a jury could return a verdict" finding that the Vaughns have suffered some amount actual and ascertainable out-of-pocket damages as result of Silver's conduct, the precise number to be determined by the trier of fact. Indeed, the Vaughns should be entitled to the same measure of damages as they would have received had Silver advised them in an honest, loyal fashion to sue for legal title, to a legal three-family house, with a legal rental unit which had been fully renovated as per the terms of the contract, instead of inducing them to proceed with the closing and lose their right to this claim.

The courts are vested with considerable discretion in fashioning a remedy for a breach of fiduciary duty. *Chemung Canal Trust Co. V. Sovran Bank/Md.* 939 F.2d 12, 16(2d Cir., 1991). In this case, the proof of the Vaughns' loss of equity (appreciation damages), and their financial injury by having had to pay rent unnecessarily for more than five years, are both causally connected to Silver's breach of his fiduciary duty to them in fraudulently and deceptively concealing their rights and remedies to them and inducing them to lose those rights by proceeding with the closing rather than suing for breach of contract and obtaining the full benefit of their bargain. *Diduck v. Kaszycki & Sons Contractors, Inc.*, 874 F.2d 912, 916(2d Cir., 1989). In *Henry v. Champlain Enterprises, Inc.,* 288 F.Supp 2d 202, at 227(N.D.N.Y., 2003), the Court interpreted *Diduck, supra* to mean that "...a fiduciary must investigate the possibility of a lawsuit

15

and obtain other opinions...and make an informed decision whether to pursue any. Failure to do so...[is] a breach of duty." [citations omitted].

Further, where there are genuine issues of material fact in dispute as to the precise amount or appropriate measure of damages to be utilized, both federal and New York States courts alike have held that summary judgment should be precluded and such matters left for the trier of fact. In the Vaughns' case, whether 'appreciation' damages are available, and if so, how much lost equity, in addition to lost rent revenue and unnecessary expenditure on rent, will turn on whether the plaintiffs prove their allegations that they Silver conspired with the other defendants to defraud them, and that his role included fraudulently tricking them into losing their *pre-closing* right to obtain specific performance in a contract action. See, e.g., *Cyberlease, LLC v. JP Morgan Chase Bank,* 2005 WL 2030317, at *8(S.D.N.Y., 2005), holding that even "...a mistake as to the proper rule of damages is not material to the sufficiency of a complaint. We therefore deny Chase's motion for summary judgment against Cyberlease's fraud claim." (See also, *Jessica Howard, Ltd. v. Norfolk Southern Railway, Co.,* 316 F.2d 165, 170-171(2d Cir., 2003) reversing a grant of summary judgment because there existed a genuine issue of material fact as to the *measure* of damages to be used; *Topps Company v. Cadbury Stani S.A.I.C.,* 380 F.Supp 250, 269(S.D.N.Y., 2005) denying summary judgment on the grounds that the "resolution of what, if any, damages measures would be appropriate in this case necessitates a full factual inquiry and hence is ill-suited for a motion for summary judgment."; *Zelizo v. Ullah*, 2 A.D.3d 255, 256 (App.Div., 2nd Dept., 2003) reversing an order granting summary judgment on the ground that: "While the quantum of damages was not established, all plaintiff was required to do at this juncture was to establish some evidence of pecuniary loss. The calculation of the precise

amount is a question for the jury."[citations omitted]; *Capital Funding Services, Inc. v. Focus Real Estate Management, Inc.*, 259 A.D.2d 104, 105 (App.Div., 1st Dept., 1999) granting partial summary judgment on liability issues but denying it on issues of the amount of damages and remanding that matter for trial.

Finally, the Court's decision at pages 22-23 states that "Defendant Silver has submitted a proper 56.1 Statement, but the Vaughns fail to provide a separate counter statement. Therefore, the Court will consider Silver's statement of facts to be admitted for the purposes of this motion."

It is respectfully pointed out that the Rule 11 letter submitted to Silver's counsel, and the numerous exhibits annexed thereto, which was incorporated by reference as part of the Vaughns' opposition to the instant motion, contained a section set forth in upper case letters as "FALSE STATEMENTS CONTAINED IN MOVANT'S STATEMENT PURSUANT TO LOCAL RULE 56.1(a)". There followed a detailed refutation of four of the seven factual assertions made in Silver's Rule 56.1(a) Statement, complete with references to testimony and other evidence in support of their refutation.

While it was not properly labeled, it was certainly clearly intended to serve as the plaintiffs' counter statement, and met the threshold for specification and evidentiary support. It would constitute a manifest injustice to disregard this counter statement because of a matter of form, while rewarding an attorney who has effectively admitted every one of the seventeen allegations of fraud, deceptive practices and other misconduct perpetrated against his own clients merely because his *false and inaccurate* statement was correct as to its form.

## **CONCLUSION**

For all of the above reason, the Vaughns respectfully request that the Court grant the instant motion for reconsideration and, upon reconsideration, deny defendant Silver's motion for summary judgment, and further, grant reconsider and grant plaintiffs motion for leave to serve a proposed 2nd Amended complaint against Sloan Cooper, Peter Cooper, Bank, Tanen & Bank, and Jeffrey Tanen, Esq., and for such other and further relief as this Court deems just and proper.

Dated: Brooklyn, NY
      August 24, 2006

Respectfully submitted,

| | |
|---|---|
| /s/ Richard J. Wagner | /s/ Peter A. Cross, Esq. |
| Brooklyn Legal Services Corp. "A" | Jacob, Medinger & Finnegan, LLP |
| By: Richard J. Wagner, Esq. (RW-3017) | By: Peter A. Cross, Esq.(PC-8492) |
|     Max Weinstein, Esq. (MW-4678) |     Hugh A. Zuber, Esq.(HZ-4935) |
| 80 Jamaica Avenue | 1270 Avenue of the Americas |
| Brooklyn, New York 11207 | New York, NY 10020 |
| (718)487-1300 | (212)524-5000 |
| Attorneys for all Plaintiffs | Attorneys for all Plaintiffs |